HENRY *v.* HENDERSON, et al.

Jan. 19, 1953

No. 38626 16 Adv. S. 25 62 So. 2d 315

*James A. Finley,* for appellant.

*George Bean,* for appellees.

Kyle, J.

The complainant, Emma Henry, filed a bill of complaint in the chancery court of Chickasaw County against Rogers D. Henderson and his wife, and James A. Pickens, asking for the cancellation of clouds upon her title to a 30-acre tract of land, which she alleged had been conveyed to her by Nathaniel Miller on February 21, 1950.

The defendants in their answer denied that the complainant was the owner of the 30-acre tract of land, and averred that Rogers D. Henderson and his wife were the owners of the land under and by virtue of a deed of

conveyance from Ambrose Nichols dated February 2, 1950. Henderson and his wife deraigned title in themselves through a tax sale made by the sheriff and tax collector of Chickasaw County on May 2, 1932, and a forfeited tax land patent issued by the State to Ara Miller Nichols, the mother of Ambrose Nichols, on April 29, 1939, and a subsequent conveyance made by the heirs of Ara Miller Nichols, deceased, to the defendants' grantor, Ambrose Nichols. The defendants also averred in their answer that Henderson and his wife and their predecessors in title had acquired title to the 30-acre tract of land by adverse possession for a period of ten years, and by actual occupancy under the above mentioned tax title for a period of three years; and that the complainant was also barred from maintaining her suit by the two-year statute of limitation, which appears as Section 717, Code of 1942. The defendants asked that the complainant's bill be dismissed and that her claim of title be cancelled.

The case was tried before the chancellor upon the pleadings and proof, and the chancellor entered a decree dismissing the complainant's bill and confirming the title of the defendants.

The record shows that title to the 30-acre tract of land was acquired by Douglas Miller on February 12, 1914, by a deed of conveyance from C. M. Savage, who was the owner of the land at that time. Douglas Miller died in November, 1932, leaving as his only heir-at-law one child, Nathaniel Miller, who resided in the State of Nebraska. Douglas Miller, who was living in Nebraska at that time with his son, failed to pay the state and county taxes on the land for the year 1931, and the sheriff and tax collector advertised and sold the land for delinquent taxes on May 2, 1932, and the land was struck off to the State. On April 29, 1939, Ara Miller Nichols obtained a forfeited tax land patent to the land from the State. Ara Miller Nichols went into possession of the land im-

mediately and occupied and cultivated the same until her death in 1946. Ara Miller Nichols left five children surviving her, as her only heirs-at-law, and after her death her son, Ambrose Nichols, who was the only one of the children still residing in Mississippi, went into possession of the land and cultivated the same, and exercised complete control over the same until February, 1950. On August 8, 1949, Ambrose Nichols procured a quitclaim deed from the other four children, and on January 5, 1950, filed a bill in the chancery court against the State to confirm his title under the forfeited tax land patent against the State. On January 19, 1950, a decree was entered validating and confirming the title against the State, and on February 2, 1950, Ambrose Nichols and his wife conveyed the land to Rogers D. Henderson and his wife. Henderson and his wife then leased the land to James A. Pickens for a term of four years, beginning July 1, 1950. On February 21, 1950, Nathaniel Miller, who had resided in Nebraska during the last twenty years, conveyed the land by warranty deed to the complainant, Emma Henry, who filed her bill on July 25, 1951.

Upon the hearing before the chancellor it was conceded that the tax sale made on May 2, 1932, was void; and it was expressly stipulated that the only issue to be determined in the suit was the question whether title to the land had been vested in the defendants, Rogers D. Henderson and his wife, by adverse possession. The defendants claimed that Ara Miller Nichols and her children had acquired title to the land by adverse possession under the ten-year statute of limitations, Section 711, Code of 1942, and by actual occupation under the three-year statute of limitations, Section 716, Code of 1942, and by virtue of the two-year statute of limitations, Section 717, Code of 1942. The complainant contended that Ara Miller Nichols at the time that she obtained the forfeited tax land patent, and thereafter, occupied the land only

by sufferance or as tenant at will of Nathaniel Miller, and that her possession under the tax title was neither hostile nor adverse to the true owner.

The testimony offered by the appellees to establish their claim of title by adverse possession was as follows: Lee Ford testified that he lived about one-half mile from the 30-acre tract; that Ara Miller Nichols bought the land from the State, and lived on the land until her death; that she and her children cultivated the land; and that no one else occupied the land during that time; that Nathaniel Miller never lived on the land after Ara purchased the land from the State. Tom Pickens testified that he lived about a half mile from the 30-acre tract; that Ara Miller Nichols lived on the land when he moved up there, and that she continued to live on the land until her death; that she and her children farmed the land; and that no one else occupied the land during that time. Tom Woods testified that he lived in the same neighborhood, and was living there when Ara purchased the land in 1939 and moved on the land; that Ara continued to live on the land with her family until her death; and that Ambrose Nichols had been in control of the land since her death. Tom Woods stated that he had loaned money to Ara Miller Nichols "to redeem the place."

Oscar Davenport testified that Douglas Miller went to Nebraska before his death to live with his son, Nathaniel; that Ara Miller Nichols moved on the land sometime thereafter and continued to live on the land until her death, and that she and her family worked the land, and that no one else worked the land. Andrew Jones testified that Ara Miller Nichols lived on the land five, six or seven years; that he did not know where she got it from, but that she never left until her death; that Douglas Miller left Mississippi and went to Nebraska long before Ara Miller Nichols moved on the land; that after Douglas Miller left Green Miller had charge of the place

for a time, and that Will Miller, who was Ara's father, then had charge of it for a number of years. The witness thought that Will Miller died before Douglas died. Ches Harvey testified that Ara lived on the land five or six years before her death, and that she and her husband and children worked the land, and that no one else lived on the land; and that Ara's children continued to cultivate the land after her death. The witness did not know how Ara got possession of the land, but he had heard that she had bought it. Tom Pickens testified that he built a side room to the house while Ara was living in the house, and that she paid for it.

It was admitted by the parties that the land in controversy was assessed to Ara Miller Nichols for the years 1941 through 1945 both inclusive, and that Ara had been granted a homestead exemption for tax purposes for each of those years.

The complainant offered four witnesses to prove her contention that at the time she obtained the forfeited tax land patent Ara Miller Nichols was occupying the land by sufferance of Douglas Miller.

Clyde Miller testified that he was a brother of Ara Miller Nichols, and that the understanding between Ara and her father at the time Ara moved on the land, was that if Douglas Miller called for the place, Ara would have to move. Clyde Miller' stated that Mr. Seymour Jones helped Ara obtain the tax patent to the land, and that Jones stated to her that if any of Douglas Miller's heirs called for the place, that she would have to move, and that Ara said ''all right.'' Clyde Miller stated that Douglas Miller had been gone a long time when Ara moved on the land. On cross-examination, Clyde admitted that Ara lived on the land six or seven years, and that no one lived on the land during that time except Ara and her children; and that Nathaniel Miller did not come to Mississippi or try to get the land.

Richard Henry who was the husband of the complainant testified that after Douglas Miller left, his brother, Green, looked after the land, and that later Will Miller looked after the land; that Will Miller was looking after the land when Ara moved on the land; and that after Ara moved on the land Mr. Seymour Jones helped her procure a tax title to the land so she could get a homestead exemption. Richard stated that Ara said that she never did own the land, but her father just gave her a tax title; that Mr. Jones told Ara that if Douglas Miller or his heirs asked for the land she would have to move, and she agreed to that. Richard admitted that Ara paid the taxes each year, and that she obtained homestead exemption on the land, and that Ara claimed that she had a tax title to the land. He admitted that Nathaniel Miller never tried to get the land during Ara's lifetime, and that the first time Nathaniel came down and claimed to have anything to do with the land was the year before the trial. James Burdine testified that he had heard Ara Miller Nichols and her father say that her father gave Ara the privilege of moving on his brother's place until the heirs or someone called for it, that he had never heard Ara say anything about owning the land. On cross-examination he admitted that after Ara moved on the land she continued to live there until her death. Johnny Roberts testified that he had heard Ara say that she had moved on the land and was taking care of the property until some of the Miller heirs called for it.

The chancellor held that the contention of the complainant that the defendants and Ara Miller Nichols and her children held the land by sufferance of the former owner, Nathaniel Miller, was not well taken and was not sustained by the proof; and the chancellor found that the defendants and their predecessors in title had been in actual, peaceable, adverse, open, notorious, hostile, continuous and exclusive possession of the land for more than ten years, and that they had acquired title to the

land by adverse possession under sections 711, 716 and 717 of the Code of 1942.

The appellants' attorney argues on this appeal that the court erred in holding that the proof was insufficient to show that Ara Miller Nichols and her children occupied the land only as tenants by sufferance of Nathaniel Miller, the true owner; and that the court erred in holding that the defendants had acquired title to the land by adverse possession. The appellants' attorney in his brief says "That the uncontradicted proof in this case is that Ara Miller Nichols repeatedly said that she did not claim title to the land." This contention is based upon the testimony of the four witnesses, Clyde Miller, Richard Henry, James Burdine and Johnnie Roberts, all of whom undertook to repeat conversations which had occurred between Ara and her father, and between Ara and Mr. Seymour Jones twelve years or more before the date of the trial, in which it was made to appear that Ara acknowledged the ownership of the property by the heirs of Douglas Miller, deceased.

But we think that the chancellor was amply justified in holding that the complainant had failed to establish by a preponderance of the evidence her claim that Ara Miller Nichols was a tenant by sufferance of Nathaniel Miller in 1939 when she purchased the land from the State; and we think that the evidence was sufficient to establish the defendants' title by adverse possession under the ten-year statute of limitations, Section 711, Code of 1942.

The testimony of the above named witnesses who testified for the complainant had to be weighed by the chancellor along with the other testimony in the record. The only persons who might have contradicted that testimony directly were dead. The witnesses who undertook to repeat the alleged conversations which had taken place between Ara and her father, and between Ara and Mr. Seymour Jones, many years before the date of the

trial, were unable to remember other facts which were pertinent to the issues concerning which they were attempting to testify. Two of the witnesses were closely related to the complainant and the other two witnesses had little reason for trying to remember conversations which had taken place between other parties many years before the trial concerning a matter in which they had no interest.

The implications to be drawn from the testimony of the above mentioned witnesses to the effect that Ara admitted that she held possession only by sufferance of Nathaniel Miller are contradicted by other testimony in the record and by facts which are undisputed. It is admitted that Ara applied for and obtained from the State Land Commissioner on April 29, 1939, a forfeited tax land patent purporting to convey to her title to the land, and the record shows that she had the same duly recorded on the public land records of the county on August 2, 1939. The record shows throughout that she was in possession of the land and occupied the same during the remaining years of her life, and that she and her family cultivated the tillable portions of the land; that she added an additional room to the dwelling house; and that she filed a sworn application each year for homestead tax exemption, alleging that she was the owner of the land, and obtained a homestead tax exemption on the land. These were all acts evidencing a claim of ownership which was inconsistent with a recognition of title in the heirs of Douglas Miller, deceased.

 "One in possession under a deed presumptively enters in his own right and claims the land to the limits of his deed." 2 C. J. S., p. 825, Adverse Possession, par. 217. It is unnecessary to prove by evidence other than the deed that the claim of one holding a deed to the land is adverse. Hassam v. J. E. Safford Lumber Co., 82 Vt. 444, 74 A. 197.

The title to the land which Ara had obtained from the State may have been defective because of the invalidity of the tax sale made on May 2, 1932. But "Adverse possession of property under a void or defective deed may ripen into title, and a void or worthless deed may be sufficient to show the hostile character of the possession, or the date on which adverse possession began, and the nature and extent of possession." 2 C. J. S., p. 591, Adverse Possession, par. 72 c. The forfeited tax land patent constituted a color of title, and when Ara had the patent recorded on the public records of the county on August 2, 1939, she gave notice to the world that she claimed to be the owner of the land. Boyd et al. v. Entrekin et al. (Miss.), 45 So. 848; Shepherd v. Cox et al., 191 Miss. 715, 1 So. 2d 495; Downing v. Starnes et al. (Miss.), 35 So. 2d 536. "The hostility of an adverse claimant's possession may be shown by evidence of a deed by which he claims, even though such deed is insufficient to convey title or is void upon its face." 2 C. J. S., p. 830, Adverse Possession, par. 221 (aa).

Ara's filing of an application each year for homestead tax exemption constituted a continuous assertion of her ownership of the land.

For the reasons stated above the decree of the lower court is affirmed.

Affirmed.

*Roberds, P. J.,* and *Holmes, Arrington* and *Ethridge, JJ.,* concur.