SEWARD *et al. v.* WEST.

(Division B. Oct. 16, 1933. Suggestion of Error Overruled Nov. 27, 1933.)

[150 So. 364. No. 30734.]

**J. G. Holmes** and **R. R. Norquist,** both of Yazoo City, for appellants.

Campbell & Campbell and **Ruth Campbell,** all of Yazoo City, for appellee.

Argued orally by **J. G. Holmes** and **R. R. Norquist**, for appellant.

**Griffith, J.,** delivered the opinion of the court.

On October 15, 1931, appellant Seward was the owner of the land and timber described as the East half of Southeast quarter, Section 13, Township 11, Range 5 West, in Yazoo county, and George West, appellee's assignor, was the owner of the adjoining land and timber to the south thereof and described as the East half of Northeast Quarter, Section 24, in said township and range. On said date Seward, by an oral contract, sold the timber on the land first described to appellant Kelly; the terms of payment being that Kelly should pay his vendor

for the timber at the rate of five dollars per thousand feet after being cut and delivered to the mill. Seward, the vendor, at the time of the sale, delivered to Kelly, the vendee, a drawing or tracing, copied from the official township plat, which showed the location of the land and its position as regards the adjoining lands. Kelly immediately went upon the land, took the steps to locate the lines, in the manner as will be later mentioned, and, having done so, began to cut the timber. In that work, appellee's assignor avers that Kelly cut eighty-two oak trees south of the dividing line between the said lands and on the land of West. Suit was brought by appellee against both Seward and Kelly for the statutory penalty (Code 1930, section 3411) and for actual value, and upon the trial the jury rendered a verdict in favor of the plaintiff and against both of the defendants for the sum of one thousand two hundred thirty dollars. From the judgment in response to the verdict, this appeal is prosecuted.

The first question to be considered is whether Seward is liable either for the statutory penalty or for actual damages. It was the theory of the trial court, in permitting a joint recovery, that Seward and Kelly were engaged in a joint enterprise or an enterprise in which they had a common interest; and, moreover, that, because the land was wild swamp land, there was an obligation on the vendor to go upon the ground and point out the lines to his vendee. No authority is cited by appellee which, when scrutinized, supports the said theory of appellee, or either of the asserted grounds thereof. There was no relation of employer and employee between Seward and Kelly. Seward simply sold the timber on his own lands to Kelly, and furnished to his vendee the equivalent of a legal description thereof. He did not thereby authorize Kelly to go upon any other lands, and in doing so Kelly, not being authorized, was no agent of the vendor. The vendor did not go upon the land and assume to point out

the lines to his vendee, and the vendor neither exercised or assumed any function in that particular. Under the terms of the sale, Seward, the vendor, had or retained no authority or supervision over the cutting of the timber or over Kelly in that operation. He made no advances to Kelly, and he had absolutely no control over what Kelly did in the cutting operations, nor did he at any time attempt to assume or exercise any such control. To hold Seward as to a demand for the statutory penalty because of a wrongful cutting over the line would be to hold him for something which he did not authorize and over which he had no legal control—and one or the other of those elements is essential to a recovery of that penalty. The proposition is clear, but authorities may be found in notes, 63 C. J., p. 934, par. 77. Seward, the vendor, is not liable for the statutory penalty; but we think he is jointly liable for the actual value, inasmuch as the record sufficiently discloses that he received the proceeds up to five dollars per thousand for all the timber cut in this operation, and therefore for the eighty-two trees cut over the line.

The next question is whether Kelly, the vendee, who did the cutting, is liable for the statutory penalty. Before cutting any of the timber, Kelly went to one Perry, who was the manager of a plantation in that vicinity, and Perry pointed out to him what was reputed to be the northeast corner of section 13. From that point Kelly, who was an experienced woodsman, stepped off a mile south, and, aided by a compass, followed along old blazes which appeared to be about fifteen years old. When he had stepped, as accurately as he could, a distance of one mile, and which would bring him to the southeast corner of the section, from which latter point a line to the west would separate the two properties, he looked for the marks on the trees which would indicate whether he had in fact arrived at the corner, and, finding there such markings or indications on the trees, he then

went west, and found on that line also old marks on the trees extending to the brake. Being convinced from all of this that he had found the line, he took that line for his operations, and no trees were cut below it. And, before any timber was cut at this point, Mr. West, the then owner of the adjoining land in section 24, came to this corner, and Kelly pointed out to him the dividing line which Kelly had located or found as aforesaid, and, in response to questions, propounded by appellee's counsel, the testimony is further that West was then of the impression that the line so located and pointed out was the correct line. A subsequent survey was made at the instance of West, and that line ran sufficiently to the north to include the eighty-two trees for which suit was brought.

We are of opinion that the testimony does not support the verdict for the statutory penalty against Kelly—it does not make out a case of willfulness, or of such gross negligence or actual indifference or want of good faith as to be tantamount to willfulness. Long ago it was held in Keirn v. Warfield, 60 Miss. 799, 808, that, where a party acts in good faith, "he will not be required to make a survey or resort to any unusual or troublesome means to ascertain boundaries not plainly visible." If Kelly was not required to make a survey, as he was not, what else could he have done, short of a survey, that he did not do? And that he was acting in good faith has a sufficient confirmation in the fact that he pointed out to his adjoining owner the line he had found and the evidences thereof, and which he had concluded from the indications there visible was the true line, and, when so done, the line thus indicated was not then disputed by the other owner, but the other owner was at that time apparently of the impression that the said line was the correct line.

The court, in more than one instruction granted at the request of plaintiff, charged the jury that they should find against the defendants on the issue of the statutory penalty if the jury believed that Kelly "did not use due care

and caution to ascertain the lines,'' or cut the timber
''without the exercise of proper care and caution to pre-
vent a trespass.'' It is true that these expressions were
used in a more or less close connection with the words
''intentionally'' and ''willfully,'' but the language al-
ways is so phrased that the jury could well have inter-
preted the instructions as authorizing the conclusion of
willfulness if proper or due care was not exercised, and
the jury may well have thought under the language of
these instructions that due care and caution would re-
quire an actual survey, or in any event that due care and
caution required Kelly to do more than he did.

We regard this case as furnishing an apt occasion for
pointing out specifically what nearly all our decisions
have indicated in a general way. In Therrell v. Ellis, 83
Miss. 494, 35 So. 826, it was laid down that one of the req-
uisites for the recovery of the statutory penalty is that
it must be shown that the cutting ''was done willfully,
intentionally, and knowingly, or recklessly, carelessly,
and without taking due and proper precaution to prevent
the commission of a trespass.'' This case refers for its
authority for that statement to Mhoon v. Greenfield, 52
Miss. 438, and Keirn v. Warfield, supra. But the first
does not support it in language, and the second does not
upon the facts therein. It will be seen that in the quoted
sentence there is a grouping of words whereby some of
them declare that the trespass must be willful or reck-
less, and by others in the same sentence that the require-
ment is only that the act shall be carelessly done without
taking due and proper precaution. In a portion of this
grouping the requirement is that the acts must be char-
acterized by willfulness or recklessness, which latter is
the equivalent of gross negligence, and in the others that
simple negligence is enough. How then can an instruc-
tion couched in such words as contained in the quoted sen-
tence furnish an accurate guide to a jury? Yet this en-
tire sentence in substantially the same words as quoted

were given in charge to the jury in this case, and it is found in the instructions in nearly every case that come here upon appeal from verdicts for statutory penalties for cutting trees.

The first decision dealing fully with this question was Mhoon v. Greenfield, supra. In that case it was said that, if the cutting complained of was "characterized by gross carelessness and negligence, in omitting reasonable pains to ascertain the boundaries of the land, . . . the statute applies." And the court thereupon illustrated by saying that "the raftsman who goes into the swamp and cuts and floats logs, without inquiry or knowledge as to the ownership of the land, cannot escape the penalty on the plea that he did not know that the plaintiff was owner." In McCleary v. Anthony, 54 Miss. 708, 711, it was said that "the statutory penalty is recoverable only in cases of willful trespass, or of inexcusable neglect to take proper precautions for avoiding the trespass." But in the late case, Murphy v. Seward, 145 Miss. 713, 726, 110 So. 790, 792, the court used language clear and direct, as follows: "The elements of willfulness, recklessness, or gross negligence, which have always been necessary to support an action for the penalty must still be shown;" so it was said also in Ladnier v. Lbr. Co., 135 Miss. 632, 643, 100 So. 369. And in the recent case, Planters' Package Co. v. Parsons, 153 Miss. 9, 14, 120 So. 200, 201, it was distinctly pointed out that statutory penalties such as this "are designed chiefly as punishment, are quasi criminal," and that recovery therefor should be allowed "only in case of culpable fault or omission." Culpable means that which is deserving of moral blame.

Without unduly extending comment, we add by way of summary that this court has always been cautious in the infliction of the statutory penalty, and will allow it only where the facts are well proved and where the testimony shows the trespass to have been willful, or the negligence so gross, or the indifference so real, or the lack of good

faith so evident, as to be tantamount to willfulness; and an instruction which is couched in such inharmony of terms or obscurity in phraseology as not to guard against recovery of the penalty on less than the requirements just stated should not be given.

The remaining question is whether Kelly is liable for the actual value of the trees cut by him below the true or correct line. As already mentioned, a survey was made subsequent to the cutting, and the line so surveyed ran to the north of the line which Kelly had found and had supposed to be the line, and it was shown that eighty-two oak trees had been cut south of this surveyed line. A scale of the quantity of timber in the eighty-two trees was made in the usual and only available method of the scaling of timber that has been cut and removed. This scale showed a total of eighty-three thousand feet, which at five dollars per thousand would amount to four hundred fifteen dollars.

Appellants urge strongly upon us that the said survey is incorrect and undependable. We cannot review that question. The record shows that the surveyor had made a map or drawing of his survey and private field notes of the details thereof. In his testimony much of that which was material was delivered by the use of the map and by pointing out thereon what he did and why he followed the particular course or courses there pointed out. But the said map and private field notes are not made a part of this record, and we can therefore only repeat what was said on that subject in Planters' Package Co. v. Parsons, 153 Miss. 9, 12, 120 So. 200, and in Hume v. Inglis, 154 Miss. 481, 487, 122 So. 535.

The testimony, in so far as we are able to review it, is sufficient to support the judgment for actual value and to the extent of four hundred fifteen dollars; and, if appellee will enter a remittitur down to that sum, the judgment will to that extent be affirmed; otherwise it will be reversed and the cause remanded.

Affirmed, with remittitur.