PIPPIN *v.* SIMS.

Division A.    Mar. 19, 1951.

No. 37886    (51 So. (2d) 272)

Welch, Cooper & Welch, for appellant.

Quitman Ross, for appellee.

**Kyle, J.**

I. V. Sims, plaintiff, sued Oliver Pippin and R. G. Crout, defendants, in the county court of Jones County

for damages and the statutory penalty for the wrongful cutting of timber on the land owned by Sims. Sims recovered a judgment against both defendants for the actual value of the timber and against Pippin only for the statutory penalty. From that judgment Pippin appealed to the circuit court. The circuit court affirmed the judgment of the county court and Pippin has appealed to this Court.

Sims was the owner of a tract of land described as the West Half of the Northwest Quarter of Section 28, Township 10 North, Range 11 West, and Pippin was the owner of the 20-acre tract of land described as the South Half of the Southeast Quarter of the Northwest Quarter of Section 28. Pippin's 20-acre tract of land was situated immediately east of and adjoined Sims' south 20 acres. Pippin called upon Sims and told him that he wanted to sell to Crout the timber on his 20-acre tract, and that Crout also wished to purchase Sims' timber. Sims told Pippin that his timber was not for sale, that he wanted to cut his own timber for his own personal use. Pippin indicated that he was not satisfied with the old boundary line between the 20-acre tract owned by Pippin and the south 20 acres of the Sims' tract. Sims told Pippin that if he did not want to use the old line Pippin could get the county surveyor to run the line and that he (Sims) would pay half of the cost and help him run the line. Sims testified that Pippin agreed to do that and fixed a definite day for the survey to be made. Because of the rain and sleet, Pippin did not notify the county surveyor and the line was not run on the day which had been tentatively agreed upon. Later Pippin called upon Sims at his home to talk to him again about the sale of the timber and the running of the line. Sims again told Pippin that he did not want to sell his timber, and that if Pippin did not want to use the old line he could get the county surveyor to run the line and he (Sims) would pay half the cost and help run the line.

Pippin did not get the county surveyor to run the line, but a few days later went into the woods with Crout and one Howard, who had a pocket compass, and undertook to establish the line and to point out to Crout the timber that he was to cut. Sims was not present and had no notice of Pippin's determination to run the line for himself without the assistance of the county surveyor. A considerable portion of the timber was standing on low marshy land which could not be easily traversed during the wet season. But Pippin and Howard, with the aid of the pocket compass, established a line which Crout was to follow, and Pippin pointed out to Crout the timber that he was to cut. Crout then proceeded to cut the timber on the land which Pippin pointed out to him. A few days after the timber had been cut, Sims learned of the cutting and upon making an inspection of the land found that trees had been cut for a considerable distance west of the old line. Sims then employed Steverson, the county surveyor, to run the line between his land and Pippin's 20-acre tract. The survey thus made by the county surveyor coincided with the old line that Sims had indicated he was willing to accept. After the line had been thus re-established by the new survey, it was definitely ascertained that Crout had cut 28 pine trees on Sims' land, and that the log scale measurement of the timber thus cut on Sims' land was 5,135 feet.

Sometime thereafter Pippin employed Wash Sumrall to make a survey of the line between his land and Sims' land. Sumrall made the survey, and his survey showed the line to be east of Steverson's line.

At the conclusion of the testimony in the county court the court instructed the jury that the defendant, Crout, could be held liable only for the reasonable value of the timber. But as to Pippin, the court held that the proof was sufficient to justify the submission of the case to the jury on the question of liability for the statutory penalty, as well as the actual value of the timber; and the question of Pippin's liability for the statutory penalty

was submitted to the jury under proper instructions of the court. The jury returned a verdict for the plaintiff for the actual value of the timber and a penalty of $7.50 per tree for the 28 trees. A judgment was accordingly entered in favor of the plaintiff against Pippin and Crout for the sum of $66.66, and against Pippin separately for the sum of $210.00. From that judgment Pippin appealed to the circuit court and the circuit court affirmed the judgment of the county court.

The appellant assigns as error the refusal of the circuit court to reverse the judgment of the county court because of that court's refusal to grant the appellant's request for a peremptory instruction as to the statutory penalty.

In the case of Seward v. West, 168 Miss. 376, 150 So. 364, 366, the Court said that ██ ██ the statutory penalty for the wrongful cutting of timber will be allowed ''only where the facts are well proved and where the testimony shows the trespass to have been willful, or the negligence so gross, or the indifference so real, or the lack of good faith so evident, as to be tantamount to willfulness''.

██ ██ The testimony in the case that we now have before us showed that Pippin had two conversations with Sims about the sale of the timber and about the running of the line between Sims' land and Pippin's 20-acre tract. In each of those conversations Sims told Pippin that he did not want to sell his timber, and that if Pippin did not want to use the old line he could get the county surveyor to run the line and he (Sims) ''would pay half of the expense and help run it.'' Pippin did not get the county surveyor to run the line, but decided to run the line himself with the aid of Howard and his pocket compass. The line which Pippin and Howard ran varied materially from the old line which Sims claimed was the true line and which the county surveyor, after the timber had been cut, found to be the true line. Pippin gave no notice to Sims of his intention to cut the timber according to the line which

he and Howard had run, and notwithstanding Sims' offer to help defray the cost of having the county surveyor establish the true line by a proper survey, Pippin instructed Crout to cut the timber on the land which he later admitted belonged to Sims. According to the testimony of the county surveyor, the line of the cutting on Sims' land was in the form of a half circle, and its farthermost point was 200 feet west of the true line.

We think that under the facts thus presented the court was justified in submitting to the jury the question of Pippin's liability for the statutory penalty, and that the proof was sufficient to justify the jury in finding that the trespass upon Sims' land had been willful, or the negligence so gross, or the indifference so real, as to be tantamount to willfulness. Mhoon v. Greenfield, 52 Miss. 434; Murphy v. Seward, 145 Miss. 713, 110. So. 790; Ladnier v. Ingram Day Lumber Company, 135 Miss. 632, 100 So. 369; Seward v. West, supra; Hays v. Lyon, 192 Miss. 858, 7 So. (2d) 523.

The judgment of the circuit court is therefore affirmed.

Affirmed.