Odom *v.* Luehr, et al.

Apr. 7, 1952.

No. 38305 (57 So. (2d) 867)

Dunn & Singley, for appellant.

A. J. Reese, Lavalle Smith and Russell Wright, for appellees.

Holmes J.,

Appellees sued the appellant in the Circuit Court of Clarke County, seeking to recover the sum of $620 as the actual value of 1008 pine trees and 32 oak trees and the further sum of $15,600 as the statutory penalty of $15 per tree, alleging that the appellant wilfully, knowingly, unlawfully, wantonly, and recklessly cut, or had cut at his command, said trees. On motion made in open court, the cause was transferred to the chancery court upon the ground that questions of title were involved. The pleadings were then revamped to conform to chancery practice, and accordingly the appellees filed their original bill in the chancery court asserting their demand, and the appellant answered denying all responsibility and lia-

bility for the trees cut. The trial in the chancery court resulted in a decree for the appellees, awarding to them recovery for the actual value of 936 pine and oak trees cut from the lands of the appellees and the statutory penalty of $15 per tree for said 936 trees. From this decree, the appellant prosecutes this appeal.

The testimony for the appellees, which was accepted by the chancellor, was substantially as follows: The trees were alleged to have been cut during the period from November 1, 1948 to April 1, 1949. The son of the appellant was the owner of the West half and the Southeast quarter of the Southwest quarter of Section 27, Township 2, Range 15. The appellees were nonresidents of the State of Mississippi, residing in Chicago, Illinois, and were the owners of Section 28 and the North three-quarters of Section 34, Township 2, Range 15. Appellant exercised control and supervision over his son's land, including the sale of timber thereon, and said land is hereinafter referred to as the Odom land and the lands of appellees are hereinafter referred to as the Luehr lands. The Odom land was adjoined on the south and west by the Luehr lands. Appellant was familiar with the Luehr lands and the location of the timber thereon, having during the years 1939 and 1940 purchased some of the timber thereon and having sold the same to one Mark Mason, and having pointed out the same to the said Mason. In January, 1949, appellant sold to Drew Irvin the timber on the Odom land for a lump sum of $225, conveying the same by deed to the said Irvin. About the same time, the appellant sold to the said Irvin the timber on Section 28 of the Luehr lands at a price of $12 per thousand, representing that he had a deed to said timber and that the same was in the dresser drawer in his home where the transaction was consummated. Sam Hubbard worked with Drew Irvin in cutting the timber which the appellant sold him on the Luehr lands at $12 per thousand. The appellant received and cashed checks which were issued for the stumpage value of timber on the Luehr

lands.  In November, 1948, the appellant sold to James Gilbert timber on the Luehr lands at $12 per thousand and directed Gilbert where to cut the timber, the location thereof being on said Section 34 of the Luehr lands.  The appellees gave no consent to the cutting of the timber on their lands and had no knowledge thereof until after the timber was cut.  Upon discovering that the timber had been cut, they undertook to ascertain the number of trees cut and the number of feet of timber involved.  Accordingly, Leroy Mason went upon the land with Sam Hubbard, who worked with Drew Irvin in cutting the timber, and with James Gilbert and Henry Brewer, the latter having worked with James Gilbert in cutting the timber, and Hubbard and Gilbert pointed out to Mason the trees which they had cut and Mason counted the stumps and calculated the footage therein, which count showed 936 pine and oak trees cut, comprising 31,079 feet of pine timber and 1,874 feet of oak timber, which computation the chancellor discounted ten percent to provide, as he expressed it, for the possibility of error. The trees counted showed that they had been freshly cut.

The appellant in his testimony wholly denied that he had sold any timber on the Luehr lands to either Irvin or Gilbert and wholly denied that he had any connection with or supervision over the cutting of the timber and disclaimed any responsibility or liability therefor.

Numerous grounds are assigned for the reversal of the decree of the chancellor.  It is contended first that the chancellor erred in rendering a decree against the appellant for the reason that there was a variance between the allegations of the original bill and the proof in that the original bill alleged that the timber was cut by the appellant or that he had the same cut at his command and that the bill of particulars furnished by the appellees upon demand set forth that the timber was cut by the servants and agents of the appellant, whereas the proof showed that the timber was cut by vendees of the appellant.  As set forth in the case of Gilmore-Puckett

Lumber Company v. Bank of Tupelo, 177 Miss. 152, 170 So. 682, 683, it is stated that the general rule is that one who merely sells property to which he has no title is not liable for trespass committed by his vendee. Further, however, the Court in that case said: "But an examination of the cases, many of which are grouped in the annotations under Hendrix v. Black, in L. R. A. 1918D, page 220 et seq., will disclose that there is a considerable weight of authority to the effect that when one claims good title to timber and conveys it with warranty, or with assurance of good title or right grants a license to another to cut and remove having reason to believe that such other will, on the faith of that assurance of title, act in accordance with the conveyance or grant, the vendor or grantor will be liable for the acts of the grantee in damaging or removing the timber. It is not necessary, however, in this case for us to either accept or reject as correct the foregoing statement as a rule in this jurisdiction; for we have used it merely as introductory to what we do hold and which is supported by all the cases, to wit, that when the vendor for a consideration then finally determined and fixed in amount and then and there paid or secured, conveys by quitclaim merely or grants a license without any assurance of good title, so that the vendee or grantee takes it upon his own responsibility and at his sole risk of right or title, the vendor is not liable for trespasses or conversions by the vendee. If, however, even when there is no assurance of title, the payment for the timber is to be and is made to the vendor, based upon a stumpage, or log or board measure calculation as the timber is cut or is removed or is sold as lumber, then the vendor will become a joint actor in the conversion and will be liable for the proceeds received by him."

In the case of Seward v. West, 168 Miss. 376, 150 So. 364, 365, the Court, in relieving the vendor in that case from liability for the statutory penalty, said: "The vendor did not go upon the land and assume to point out the lines to his vendee, and the vendor neither exercised

nor assumed any function in that particular.'' ██ █
Under the facts of this case as shown by the testimony
on behalf of the appellees and which the chancellor
adopted, the appellant sold to Irvin the timber on Section
28 at $12 per thousand, directing him to cut thereon,
knowing the location of the timber, and knowing that he
had no title thereto although he claimed to Irvin that he
had a deed thereto in his dresser drawer, thus giving to
Irvin his assurance of title. According to the proof on
behalf of the appellees, which proof was adopted by the
chancellor, the appellant sold to Gilbert the timber on
Section 34, directing Gilbert where to cut and knowing at
that time that he had no title thereto. Thus, under the
testimony on behalf of the appellees, the appellant be-
came a joint actor with Irvin and Gilbert in cutting the
timber and, therefore, became a principal in the trespass.
██ █ We are of the opinion, therefore, that this proof
was not at variance with the allegations of the bill or
with the information furnished in the bill of particulars.
██ █ It is next argued by the appellant that the testi-
mony of Leroy Mason as to the number of trees cut and
the computation of the footage therein was incompetent
as hearsay, since he was not present when the trees were
cut and derived his information from Sam Hubbard and
James Gilbert. There would be merit in this contention
of the appellant if James Gilbert and Sam Hubbard had
not appeared as witnesses and testified that they pointed
out to Mason the trees which had been cut and which he
counted. Having so testified, the testimony of Leroy
Mason as to the number of trees cut as pointed out to
him by Hubbard and Gilbert was competent. Keirn v.
Warfield, 60 Miss. 799.
██ █ It is also contended by the appellant that the
court erred in permitting the witness Mark Mason, over
the objection of appellant, to testify that he bought timber
from the appellant on Sections 28 and 34 in the years
1939 and 1940 for the reason that such incident was too
remote. Mark Mason testified, however, that upon pur-

chasing this timber the appellant pointed out the timber to him and we think the testimony was competent to show the appellant's knowledge of the location of the timber as well as bearing upon the question of appellant's wilfulness in selling timber to Gilbert and Irvin on the Luehr lands, knowing the timber to belong to the appellees.

Appellant argues also that the court erred in allowing recovery for the statutory penalty. The proof is ample to support the chancellor's finding that the appellant wilfully sold the timber to Irvin and Gilbert, representing in his sale to Irvin that he had a deed to the timber, knowing that the timber belonged to the appellees, and directing the purchasers where to cut, and that he thereafter accepted checks for the stumpage. We are unable to say, therefore, that the chancellor's finding is mainfestly wrong and we are not justified in disturbing it. Where the testimony shows the trespass to have been wilful, the statutory penalty may be allowed. Seward v. West, 168 Miss. 376, 150 So. 364; Pippin v. Sims, 211 Miss. 194, 51 So. (2d) 272; Sansing v. Thomas, 211 Miss. 727, 52 So. (2d) 478.

It is further contended by the appellant that the decree of the chancellor is contrary to the overwhelming weight of the evidence. We have carefully considered the testimony and are of the opinion that it amply supports the chancellor's decree.

We find no reversible error in the appellant's other assignments.

We are accordingly of the opinion that the decree of the court below should be and it is affirmed.

Affirmed.

McGehee, C. J., and Hall, Lee, and Arrington, JJ., concur.