C. L. GRAY LUMBER Co., INC., et al. *v.* PICKARD, et al.

March 22, 1954

No. 39168 58 Adv. S. 18 71 So. 2d 211

*Cameron & Cameron,* Meridian, for appellants.

*Gipson, Gipson & Wiley,* Meridian, for appellees.

Lee, J.

N. T. Pickard and others, Trustees of Hayes Graveyard, brought this suit, in the Circuit Court of Lauderdale County, against C. L. Gray Lumber Company, Inc., et al., to recover actual damages and the statutory penalty on account of the alleged wrongful cutting of timber on the Graveyard property. There was a verdict for $267, actual damages, and $1,125 for the statutory penalty. From the judgment entered thereon, the Lumber Company appealed.

Hayes Graveyard has been a burial ground for many years. Some tombs have dates as far back as 1872, and interments were made there even prior to those erections.

According to the evidence for the plaintiffs, the citizens of the community, about May 7, 1924, held a meeting at the cemetery for the purpose of electing trustees and obtaining additional land. The existing cemetery lot, as well as the adjacent land, had been owned for a long time by the Hayes family, of whom B. J. and

B. M. Hayes, brothers, survived. Three trustees were elected. The purpose was to purchase two acres. W. G. Fowler, the county surveyor, who was also a civil engineer, surveyed out the two acres, including the existing lot, put down corner stobs, blazed the lines, and obtained the description for the deed. Either he or Milledge Johnson, a supervisor, prepared the deed. It was then signed and delivered by the Hayes brothers, after they had been paid $20.00, and it was then delivered to Milledge Johnson for him to have recorded. On August 7, 1924, Fowler filed a plat of his survey for record, and it was recorded in Surveyors' Record Book No. 2 in the chancery clerk's office. A fence was built around a part of the parcel. Through the succeeding years, the people, in burying their dead, used all of the acreage outside the fence as hitching grounds for teams, parking space for automobiles, and in spreading dinner on certain occasions. The trees served as shade and protection from the elements during the burials. The Graveyard lines were kept blazed and visible through the years.

Two acres in the SW¼ of the NW¼ of Section 32, Township 5, Range 7 East was assessed on the land roll of 1930-1931 to Hayes Graveyard, and was shown to be exempt. There was a like assessment for 1950-1951.

On June 4, 1930, B. J. Hayes, the sole owner, conveyed by warranty deed to his son, J. O. Hayes, ''part of the SW¼ of NW¼, 38 acres'' of this governmental subdivision. H. G. Irby, Jr., in the early 1940's, cut timber on this subdivision, but he stopped at the Graveyard line, and cut no timber on its property. His father was present at times during those operations. By deed of date of June 19, 1950, H. G. Irby, Sr. acquired the one-half interest of Mollie J. Abrams and others to the property described as above; and on June 21, 1952, he conveyed to C. L. Gray Lumber Company, Inc., all timber

ten inches in diameter and ten inches from the ground on the land as described above.

In November or December 1952, Bryant and Ernest Shirley, under a contract with the Lumber Company to cut timber, moved their mill on this forty. Several citizens and trustees of the Graveyard property notified the Shirleys that the land in proximity to the fenced in part, the land here in dispute, was a part of the Graveyard property, and forbade the cutting of the timber thereon. The Shirleys informed the Lumber Company accordingly, but the Company directed them to proceed with the cutting. This was accordingly done about thirty days later. The Lumber Company admitted that it had notice of the claim before the timber was cut. However, in justification therefor, it offered proof that it conferred with its grantor, and that he advised them to proceed. Besides, an attorney advised that there was no deed of record to the Graveyard, and in fact, the deed in question could not be found of record, nor was it found in the effects of Milledge Johnson, who was then deceased. The attorney did not examine the Surveyors' Record Books, where the survey would have been found, but he observed that two acres was assessed, on the land rolls, to the Graveyard as exempt. Irby disclaimed any knowledge that the authorities of the Graveyard claimed the disputed land.

Approximately 168 trees of all sizes were cut. There was testimony that they would have yielded 6,000 feet of saw logs, valued at $30 to $35 a thousand, and that the smaller sizes were suitable for pulpwood.

Appellant contends (1) that appellees failed to show their ownership by adverse possession; (2) that evidence as to the execution of the deed was erroneously admitted; (3) that evidence from the Surveyors' Record Book was not admissible, and that it was error to refuse its requested instruction that the contents of such book did not constitute notice; and (4) that the proof was

insufficient to sustain a verdict and judgment for the statutory penalty.

Contentions (1) and (2) are considered together.

██ █ In justification of their claim of possession and dominion over the property from 1924, the plaintiffs undertook to show that they did not appropriate the lands of their neighbors, but that they actually purchased it, paid for it, and received a deed to it. Since the deed was not of record and could not be found, they were entitled to show that they obtained the land in a lawful manner, that the deed thereto was delivered, and that they at least had color of title.

██ █ Even though it might be said that the deed was defective or invalid, still adverse possession thereunder could ripen into title. See 2 C. J. S., Adverse Possession, Section 72c, p. 591, which is as follows: "Adverse possession of property under a void or defective deed may ripen into title, and a void or worthless deed may be sufficient to show the hostile character of the possession, or the date on which adverse possession began, and the nature and extent of possession." See also Section 221, dd., (aa) thereof, as to the deed's evidence of the hostility of their possession to wit: "The hostility of an adverse claimant's possession may be shown by evidence of a deed by which he claims, even though such deed is insufficient to convey title or is void upon its face." See also Henry v. Henderson, 216 Miss. 252, 62 So. 2d 315.

██ █ Religious groups may acquire property by adverse possession. In the case of church property, it is sufficient if used in the same way that such property is ordinarily used. 45 Am. Jur., Religious Societies, Section 51, p. 762; 2 C. J. S., Adverse Possession, Section 38b, p. 548; Ivey v. Geisler, 213 Miss. 212, 56 So. 2d 501. There is no valid reason why such principle should not also apply to Graveyard property.

Besides in Broadus v. Hickman, 210 Miss. 85, 50 So. 2d 717, where wild lands were involved, Broadus took

possession, paid taxes, gave a lease under which visible acts upon trees were performed, burned fireguards, had the property surveyed, the corners established and marked, blazed some trees along the survey, and transplanted trees. Under those facts, the Court then said: ''lt is evident, too, that any person of ordinary observation, going upon and inspecting the land as a prospective purchaser, would have noticed signs of ownership being exercised thereover. Noticing these, slight inquiry would have brought home to Hickman the knowledge Mr. and Mrs. Broadus were claiming and occupying the land when he got his quitclaim deed * * *''.

In like manner, the possessory acts of the Graveyard authorities should have been notice of their claim both to H. G. Irby, Sr. and the appellant when they were prospective purchasers of the thirty-eight acres. The Irbys, when they cut the timber on this subdivision in the early 1940's, stopped at the Graveyard line and cut no timber on the two acres. There was testimony that, at one time, when H. G. Irby, Sr. was attending a funeral, he spoke of the pretty trees on the north side and expressed appreciation for a nice shade on such occasions.

Consequently the two contentions are untenable.

■■■■ As to contention number (3), the evidence was admissible to show the description of the two acres to which the plaintiffs acquired title by adverse possession. Moreover, it was also of value on the question as to whether a deed was actually executed. ■■■■ Although Section 4277, Code of 1942, provides for the recordation of surveys, the Surveyors' Record Book does not constitute constructive notice in the absence of a recorded deed. The requested instruction to that effect should have been given. However, liability in this case attaches by reason of the cutting of the timber on land in the visible possession of the Graveyard authorities and after actual notice of their ownership, as pointed out above. The refusal of the instruction, therefore, did not constitute

reversible error. It is also true that one of the plaintiffs' instructions, in its enumeration of the several acts which constituted notice, included a reference to the Surveyors' Record Book. But in view of the reason for liability just pointed out, the giving of that instruction was mere harmless error.

 In response to contention number (4), it is only necessary to say this: Under the plaintiffs' proof that the trustees took possession of the two acres by virtue of a deed, which was executed and delivered but which had become lost; that they have exercised dominion and control over it ever since; that the Lumber Company, with full notice of the claim that it was Graveyard property and in utter disregard of such notice, went ahead and cut the timber—under such proof, the jury was fully warranted in imposing the statutory penalty provided for in Section 1075, Code of 1942, as Amended by Chapter 312, Laws of 1950. Floyd v. Williams, 198 Miss. 350, 22 So. 2d 365; Pippin v. Sims, 211 Miss. 194, 51 So. 2d 272; Sansing v. Thomas, 211 Miss. 727, 52 So. 2d 478; Odom v. Luehr, 213 Miss. 782, 57 So. 2d 867.

It therefore follows that this cause should be, and is, affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Kyle* and *Holmes, JJ.,* concur.