490 So.2d 1201 (1986)
Edward W. GRISHAM and Leslie J. Johnson
v.
Ada Bell HINTON, et al.
No. 56042.
Supreme Court of Mississippi.
May 28, 1986.
*1202 John M. Deakle, Hattiesburg, for appellants.
Rex K. Jones, John M. Dunnam, Jr., Hattiesburg, for appellees.
Before PATTERSON, C.J., and HAWKINS and PRATHER, JJ.
HAWKINS, Justice, for the Court:
Edward W. Grisham and Leslie J. Johnson have appealed from a decree of the chancery court of Perry County awarding Louin C. Foxworth and J.K. Hinton damages for having to defend Grisham's and Johnson's suit for trespass against them. Mrs. Ada Bell Hinton has appealed from the same decree awarding Grisham and Johnson actual and statutory damages for the wrongful cutting of trees.
We affirm Mrs. Hinton's appeal, finding a factual issue was presented both on actual and statutory damages, which the chancellor resolved in favor of Grisham and Johnson.
Because we find the trial court lacked the authority to award attorney's fees and trial expenses to Foxworth and Hinton, we reverse and render on the Grisham and Johnson appeal.

FACTS
Grisham and Johnson owned the west half of a section of land in Perry County (West Half of Section 9, Township 3 North, Range 9 West). Ada Bell Hinton and her husband J.K. Hinton owned, together with other land, a life estate in the Northeast Quarter of a section immediately West of the Northwest Quarter of Grisham's and Johnson's land (Northeast Quarter of Section 8, Township 3 North, Range 9 West). The fee simple remainder interest in this quarter section was vested in her son by a former marriage, Louin C. Foxworth. The dispute in this case arose over approximately six acres of land in the Northwest corner of Section 9, approximately 91 feet wide at its North end, and approximately twice that wide at its South end where the land bordered on a creek.
In 1978 Mrs. Hinton had their land surveyed by Leon Clifton, a county surveyor, who located their boundary line, including the coinciding line between the Hinton and Grisham/Johnson lands, and at the Northeast corner of their property (also the Northwest corner of the Grisham/Johnson property) he found a "wood stob." He also found tree blazes along the coinciding line. Mrs. Hinton was present when he located this line and corner. Unhappy with Clifton's survey, Mrs. Hinton hired another surveyor, Guy L. Walker, who ran the line and came to the same conclusion as Clifton.
Despite these two surveys, Mrs. Hinton removed the Northeast corner marker, and placed another metal and concrete marker approximately 91 feet to the East. In December, 1982, she entered into an agreement with Randy Malone to cut her timber and pulpwood, whereby he would be paid one-half the sales price on the timber cut, and Malone would pay her $12 per cord for pine, and $6 per cord for hardwood cut. Malone cut trees and timber in the disputed area. Mrs. Hinton pointed out the boundary to Malone where she had located it.
On June 25, 1983, Grisham obtained a temporary restraining order from the chancery court against Malone, the Hintons and Foxworth restraining them from cutting timber in the disputed area. On September 29, Grisham and Johnson filed a bill of complaint to quiet and confirm title, and also for actual and statutory damages for cutting the trees in the area. Foxworth was a resident of Arlington, Texas.
Mrs. Hinton filed an answer and a cross-claim. Foxworth and Hinton filed an answer, and also cross-claimed. In their cross-claim they alleged the plaintiffs had libelled them in the complaint, and that they had nothing to do with, and no personal knowledge of this cutting of the timber, all of which would have been known to the plaintiffs by proper investigation. They claimed damages, and also that they were entitled to attorney's fees for having to defend the trespass part of the suit asking for damages.
*1203 At trial it was agreed no dispute existed as to the record title. C.D. Johnson, a forester, testified as to the number of trees cut in the disputed area and damages.
The chancellor rendered an opinion finding that Malone and Mrs. Hinton were liable for actual damages in the amount of $7,200.25, and that Mrs. Malone was liable for statutory damages under Miss Code Ann. § 95-5-3 in the amount of $30,130.00.
The chancellor dismissed the complaint against Foxworth and Hinton. He also found they were entitled to $2,250 under their cross-claim stating:
A. Cross-Plaintiffs J.K. Hinton and Louin C. Foxworth are entitled to judgment against [sic] the Plaintiffs/Cross-Defendants Grisham and Johnson, jointly and severally, for the sum of $2,250.00 actual damages.
The Court recognizes that J.K. Hinton and Louin C. Foxworth were proper and necessary parties to Plaintiffs' action insofar as that action pertained to quieting and confirming title and establishing the true boundary line between lands of the parties. However, the Court is convinced upon mature consideration of the entirety of the evidence and pleadings in this matter that had the Plaintiffs resorted to even a modicum of investigation, or even a slight consultation with these Cross-Plaintiffs, they would have almost instantly determined that these Cross-Plaintiffs had absolutely nothing to do with the timber cutting and, indeed, recognized as the true boundary line that which had been previously identified and located by the two surveyors. Instead, the Plaintiffs persisted in charging these Cross-Plaintiffs as co-actors with Ada Bell Hinton and Randy Malone in the trespass, needlessly caused these Cross-Plaintiffs to defend themselves through the entire trial as to those spurious charges, and then on the trial Plaintiffs did not offer one iota of evidence either directly or by inference to support the charges against these Cross-Plaintiffs. Upon the basis of the foregoing, the Court concludes that equity, good conscience, and justice require that these Cross-Plaintiffs have restitution for actual damages.
No appeal has been taken by Malone. Grisham/Johnson have appealed the court's awarding suit damages to Foxworth and Hinton; they have made no assignment of error or appeal from the chancellor's dismissing the complaint against Foxworth and Hinton, or dismissing the claim for statutory damages against Malone. Mrs. Hinton has also appealed the court's awarding damages against her.

ADA BELL HINTON'S APPEAL
Mrs. Hinton does not challenge the accuracy of C.D. Johnson's calculations of the actual and statutory damages. Her contention is that there should have been no award of statutory damages in any sum because she acted in good faith, under a sincere belief the surveyors were in error.
Miss. Code Ann. (1972) § 95-5-3 authorizes penalty damages of $55 per tree of various listed species of trees, and $35 per tree of all others, which are cut down or destroyed, in addition to actual damages. The statute provides that the defendant may establish good faith as a defense.[1]
*1204 Mrs. Hinton was at the time of the trial in her 80s. Her basic contention was that, from many years experience, she was familiar with and knew the corner, and the surveyors she hired to locate their land boundaries were mistaken. Assuming arguendo, that Mrs. Hinton sincerely believed the surveyors were wrong, is this a "good faith" defense under the statute?
The answer is "No." It is not the belief she entertained, but whether or not the belief was warranted under the facts of the case which controls.
We note first that in order to make a prima facie case under the statute, the owner is only required to prove (1) that the timber belonged to him, and (2) that without his consent the defendant, his agents or employees cut it. The defendant then, as an affirmative defense, may establish good faith. Lochridge v. Hannon, 236 Miss. 687, 112 So.2d 234, 235 (1959).
We have addressed statutory damage claims in numerous cases: Nichols v. Stacks, 485 So.2d 1034 (Miss. 1986); Seismic Petroleum Services, Inc. v. Ryan, 450 So.2d 437 (Miss. 1984); Lochridge v. Hannon, supra; Strawbridge v. Day, 232 Miss. 42, 98 So.2d 122 (1957); Ginther v. Long, 227 Miss. 885, 87 So.2d 286 (1956); Hudson v. Landers, 215 Miss. 447, 61 So.2d 312 (1952); Sansing v. Thomas, 211 Miss. 727, 52 So.2d 478 (1951); Pippin v. Sims, 211 Miss. 194, 51 So.2d 272 (1951); Howse v. Russell, 210 Miss. 57, 48 So.2d 628 (1950), opinion amended 210 Miss. 57, 49 So.2d 809; Hays v. Lyon, 192 Miss. 858, 7 So.2d 523 (1942); E.L. Bruce Co. v. Edwards, 192 Miss. 1, 3 So.2d 846 (1941); Seward v. West, 168 Miss. 376, 150 So. 364 (1933); J.H. Leavenworth & Son v. Hunter, 150 Miss. 245, 116 So. 593 (1928); Kiern v. Warfield, 60 Miss. 799 (1883).
In Rutland v. Corley, 287 So.2d 433, 434 (Miss. 1973), we stated:
... the statute authorizing the penalty for cutting trees is highly penal and must be strictly construed. This Court has always been cautious in the infliction of the statutory penalty and will allow it only where the facts are well proved and where the testimony shows the trespass to have been wilfull, or the negligence so gross, or the indifference so real, or the lack of good faith so evident, as to be tantamount to wilfulness... .
In Strawbridge v. Day, supra, we stated, p. 128:
The phrase "good faith," as used in a statute such as we have here, denotes honesty of purpose, freedom from intention to defraud or to deprive others of rights or property to which in equity and good conscience they are entitled. In order to avoid liability for the statutory penalty in a case of this kind the defendant is not required to prove freedom from negligence, but only that the trespass was not willful, or did not result from wantonness or recklessness... .
Unfortunately, some of our cases have stated that mere carelessness or mistake is not enough to impose the penalty. E.L. Bruce co. v. Edwards, supra, 3 So.2d p. 847; Howse v. Russell, supra. Such language in and of itself is incomplete. Good faith requires that any person, before cutting trees, will take reasonable steps under the circumstances of the case to determine that he has a lawful authority to do so. The damage which will ensue from a mistake may also merit special care and caution. When one considers that it takes one-half a lifetime to grow pine timber, and longer for hardwood, and the loss attendant to the destruction of such trees, it is too late after the damage to simply say a mistake was made, or as in this case, she thought she was the owner. Before such a defense need be entertained there must be a showing that prior to cutting or destruction *1205 proper precautionary steps were taken by the defendant under the circumstances to assure himself he had the lawful right to do so.
Justice Roy Noble Lee, speaking for the Court in the recent case of Seismic Petroleum Services, supra, stated, p. 440:
When a person is charged with committing a willful and wanton trespass and cutting trees upon another's property without permission, the standard by which to measure him is whether or not a reasonable man under like circumstances would have gone upon the property, committed a trespass thereon and would have cut trees of the property owner.
Justice Griffith, speaking for the Court in Hays v. Lyon, supra, p. 526, made an apt statement for conduct similar to Mrs. Hinton's:
... There is too much of danger in the possibility that conduct, such as this case definitely presents, might be met with violence or breaches of the peace for the law to look upon it with the tolerance which appellant so earnestly invokes.
The rule was correctly set forth in Kiern v. Warfield, one of our earliest cases, supra, p. 809:
... The true view of the law on this subject is this: "The letter of the statute gives the penalty upon proof of any cutting upon the land of another." The courts have modified its rigor by holding that the defendant may defeat a recovery by showing that it occurred through accident, inadvertence, and mistake; provided, reasonable care and caution were taken to avoid the mistake. The burden, therefore, of showing both the unintentional mistake and the exercise of reasonable care to avoid it, is upon the defendant. What will amount to the exercise of proper care must necessarily depend upon the facts of each case; ...[2]
Due and proper regard for the property of another requires of any person, before he engages in the deliberate act of cutting or destroying a tree, to take whatever precaution and safeguards as are reasonably necessary under the facts of that case to assure himself that he has the lawful authority to do so. If he fails to take such necessary steps, he can hardly claim he has acted in good faith. Nor can he fault any fact finder who concludes from such conduct that he has acted with the requisite indifference to be tantamount to wilfulness.
We therefore find that a factual issue was made on whether statutory damages should have been assessed against Mrs. Hinton.

GRISHAM-JOHNSON APPEAL
Here we are faced with the sole question of whether the chancellor erred in awarding trial expenses, including attorney's fees, to Foxworth and J.K. Hinton for having to travel to court and defend the action in trespass filed against them.
This was error.
With the sole exception of punitive damages cases, in the absence of contractual provision or statutory authority therefor, this Court has never approved awarding trial expenses and attorney's fees to the successful litigant. It has consistently been our view that such expenses are not allowable as part of the costs. Stanton & Associates, Inc. v. Bryant Const. Co., Inc., 464 So.2d 499 (Miss. 1985); Gardner v. Jones, 464 So.2d 1144 (Miss. 1985); Litten v. Grenada County, 437 So.2d 387 (Miss. 1983); Subscribers Cas. Reciprocal Exchange v. Totaro, 370 So.2d 1342 (Miss. *1206 1979); Bellefonte Ins. Co. v. Griffin, 358 So.2d 387 (Miss. 1978); Clow Corp., et al., v. J.D. Mullican, Inc., et al., 356 So.2d 579 (Miss. 1978); Dedeaux v. Dauro, 275 So.2d 863 (Miss. 1973); Bridges v. Land, 252 So.2d 209 (Miss. 1971); Faulkner Concrete Pipe Co. v. U.S. Fidelity & Guaranty Co., 218 So.2d 1 (Miss. 1968); Gilchrist Tractor Co. v. Stribling, 192 So.2d 409 (Miss. 1966); and Barber v. Barber, 234 Miss. 89, 105 So.2d 630 (1958). Even where legal counsel for plaintiff unnecessarily put the opposing side to extra legal and trial expenses, in the recent case of Owens v. Whitwell, 481 So.2d 1071 (Miss. 1986), we refused to permit an award of attorney's fees.
Of course, parties may by contract provide that in event of dispute, the losing party must pay the winner attorney's fees. Faulkner Concrete Pipe Co., supra; Barron v. Murdock Accept. Corp., 240 Miss. 521, 127 So.2d 878 (1961); and Alexander v. The Fidelity & Casualty Co., 232 Miss. 629, 100 So.2d 347 (1958). Likewise, there are statutory provisions for awarding attorney's fees in certain cases. For example: open accounts, see: Westinghouse Credit Corp. v. Moore & McCalib, 361 So.2d 990, 992 (Miss. 1978); Evans v. Central Service & Supply Co. 226 So.2d 616, 618 (Miss. 1969); payment bond, see: Alexander v. Fidelity & Casualty Co., supra.[3]
Also, as noted, in the punitive damage case exception, attorney's fees may be considered as part of the award. See: Blue Cross and Blue Shield of Miss. v. Campbell, 466 So.2d 833, 845 (Miss. 1984).
That a party may not be able to get his attorney's fees paid as part of the costs does not mean that attorney's fees are not a proper element of damages in an appropriate case. Where a grantee in a warranty deed was required to employ an attorney to perfect his title, payment of grantee's attorney's fees was part of the damages in a subsequent suit against the grantor for breach of warranty. Howard v. Clanton, 481 So.2d 272 (Miss. 1986). Similarly, where an insured is compelled to defend himself in an action because his insurer breached its contract in denying its obligation to defend him under its liability policy, the attorney's fees incurred in the defense of that action may be awarded the insured as contract damages in a subsequent action against the insurer. Rent-A-Scooter, Inc. v. Universal Underwriters Ins. Co., 285 Minn. 264, 173 N.W.2d 9 (1969).
Here we are concerned solely with attorney's fees being allowable as part of the costs of a lawsuit.
Unfortunately, none of our cases gives the historical basis for Mississippi's adherence to the general rule of disallowing attorney's fees as a part of trial costs.
As early as 1278, the courts of England were authorized to award counsel fees to successful plaintiffs in litigation. Similarly, since 1607 English courts have been empowered to award counsel fees to defendants in all actions where such awards might be plaintiffs. See: Goodhard, Costs, 38 Yale L.J. 849, 852 (1920).
Although some American commentators have urged adoption of the English practice in this country, our courts have generally resisted any movement in that direction. Ehrenzweig, Reimbursements of Counsel Fees and the Great Society, 54 Calif.L. Rev. 792 (1966) 15 Minn.L.Rev. 619 (1931).
A careful examination of the origin and development of this country's existing rule regarding attorney fees reveal two distinct reasons why this rule has evolved and maintained its longevity in our American judicial system: (1) to encourage a uniform system of awarding attorney's fees and court costs throughout this country; (2) to provide uninhibited access to the courts to a prospective plaintiff regardless of his income.
In 1853 there was much concern in both houses of Congress about the inequities *1207 that were rampant from state to state as to how costs and attorney's fees were assessed to the losing litigants. Losing litigants were being unfairly saddled with exorbitant fees for the victor's attorney. Because of these concerns, Congress passed the Act of 1853 which set up statutory amounts to be assessed a losing litigant and excluded any other fees that were not expressly called for in that piece of legislation. See Act of February 26, 1853, 10 Stat. 161-62 (1853) [codified as amended at 28 U.S.C. §§ 571-72 (1926)]; Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975).
Free access to the courts by the poor as well as the affluent appears to be the prevailing reason for our existing rule regarding attorney's fees. In support of our American rule, it has been argued that since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponent's counsel. Farmer v. Arabian American Oil Co., 379 U.S. 227, at 235, 85 S.Ct. 411, at 416, 13 L.Ed.2d 248 (1964). Also, the time, expense and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees would pose substantial burdens for judicial administration. Oelrichs v. Spain, 15 Wall. 211, 82 U.S. 211, 21 L.Ed. 43 (1872).
In addressing the issue of awarding attorney's fees to the winning party, the following is stated in Successful Plaintiffs in Trademark Infringement Actions Under the Lanham Act May not Recover Attorney's Fees, 65 Mich.L.Rev. 593, 594 (1967):
... During the formative stages of our country's development, relatively few litigants engaged attorneys to represent them in court so that the question of attorney's fees was not commonly encountered; when the question was presented, the courts, seeking to promote free access to the judicial processes, felt constrained not to award attorney's fees since they believed that such an award to a successful litigant might discourage a potential litigant from bringing a somewhat dubious suit. Contemporary arguments have reinforced these historical bases of judicial reluctance to award attorney's fees to the successful litigant. Attorney's fees, it is argued, cannot properly be classified as damages because they are too remote from the wrong done, are not reasonably foreseeable as flowing from the act of the defendant, and accrue only after the cause of action is complete. Furthermore, there is the fear that attorney's fees would tend to become exorbitant if they could be charged to the losing party and that there would be administrative difficulty in determining what amount is "reasonable." Finally, it is argued that a party should be compensated only for harm suffered as a result of "wrongful conduct" and that to institute or defend a suit in a court of law should not be considered wrongful unless it is totally unfounded and malicious.
In Farmer v. Arabian American Oil Co., 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964), the Court stated:
It has not been an accident that the American litigant must bear his own cost of counsel and other trial expense save for minimal court costs, but a deliberate choice to ensure that access to the courts be not effectively denied those of moderate means . ..
It should be also noted that Federal courts have the statutory authority, in cases where either side has pursued a frivolous or harassing position, to assess attorney's fees. 28 U.S.C. §§ 1927, 2412, 2678; 35 U.S.C. § 285. Also, see: F.D. Rich Co. v. United States, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (citing Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962); c.f. Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 580, 66 S.Ct. 1176, 1179, 90 L.Ed. 1447 (1946); Flora v. Moore, 461 F. Supp. 1104 (N.D.Miss. 1978).

*1208 CONCLUSION
No doubt the debate on whether attorney's fees should be awarded the winning litigant will continue. It may be addressed by the Legislature as the United States Congress has, or even by a rule of this Court. Any such authority, however, should be clearly defined for exceptional cases, and be uniform in its application.
We therefore reverse and render on the Grisham and Johnson appeal.
AFFIRMED ON ADA BELL HINTON APPEAL; REVERSED AND RENDERED ON GRISHAM AND JOHNSON APPEAL.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
ROBERTSON, J., concurs with written opinion.
ROBERTSON, Justice, concurring:
I join in the Court's disposition of the Ada Bell Hinton appeal, and in the reasoning advanced in the opinion for the Court authored by Justice Hawkins. I join likewise in the result of the Grisham-Johnson appeal which reverses the chancellor's award of trial expenses and attorneys fees to Foxworth and J.K. Hinton. I write separately because I disagree with much of what the majority opinion has said regarding the reasons for reversing on the Grisham-Johnson appeal.
As I understand it, the majority's reversal is, purely and simply, predicated upon the absence of either statutory or contractual authorization for an award of attorneys fees in such cases. The majority opinion seems to proceed on the premise that there are three separate and distinct forms of law  statutes, common law or case law, and private law (contract law). Because an award of attorneys fees in this case is not authorized under statutory or contract law, the majority denies the claim, as though we have no authority as stewards of the common law of this state to recognize same. In my view these three grand categories of law are first and foremost a part of an integrated whole.[1] The differences between the three are important primarily in the context of which has priority when there is a conflict between law emanating from one source and that from one or both of the others.
More to the point in the present case, the fact that there is no statute authorizing attorneys fees in a case such as this, nor a contractual provision to that effect, does not carry us far in deciding whether, as the matter of the development of the case law or common law of this state, we should hold such fees allowable. We have for years authorized awards of attorneys fees in one type of case where there was no prior statutory authorization, to-wit: cases where punitive damages were assessable. See, e.g, Aetna Casualty & Surety Co. v. Steele, 373 So.2d 797, 801 (Miss. 1979); Kalmia Realty & Insurance Co. v. Hopkins, 163 Miss. 556, 566, 141 So. 903, 904 (1932); Yazoo & Mississippi Valley Railroad Co. v. Consumer's Ice & Power Co., 109 Miss. 43, 48, 67 So. 657, 658 (1915). There is no reason on principle why it should be thought we lack the authority to declare as a part of the common law of this state that attorneys fees and litigation expenses may be awarded in other proper contexts. Where such is necessary to "administer justice", as upon our oaths we are required *1209 to do, Miss. Const. art. 6, § 155 (1890), I would hope we would not hesitate to exercise such authority.
I have no quarrel with the history recited by Justice Hawkins in his opinion. He is accurate. The point missed is that there has in recent years been an explosion of statutory law and privately made law authorizing recovery of attorneys fees and litigation expenses by the successful litigant in a variety of contexts. The correct interpretation of this undeniable phenomenon is, to my mind, this: common law or case law, as is so often the case, is dragging its feet, lagging behind. As a result, our legislatures, acting macrocosmically, and thousands of private individuals, acting microcosmically, have begun sending us a message that our approach to the award of attorneys fees is outmoded.
Fundamentally, the majority misperceives the authority and responsibility of the Court, as stewards of the common law process, to regard as rich sources of law the rules contained in statutes and contracts. Particularly because of the plethora of statutes authorizing recovery of attorneys fees[2], we must give heed. Because they are enactments of that branch of government most clearly charged with discovering and implementing the public policy of the state, statutes are important though often neglected sources of law.[3]Bankers Life & Casualty Co. v. Crenshaw, 483 So.2d 254, 298 (Miss. 1985) (Robertson, J., dissenting). Indeed, that rules authorizing attorneys fees in other contexts are in statutory form places upon us an obligation that they be applied in analogous circumstances greater than were those rules mere common law rules. J.L. Teel Company, Inc. v. Houston United Sales, Inc., 491 So.2d 851, 857 (1986). As legislative enactments they represent authoritative expressions of the public policy of the state.
If the rules allowing awards of attorneys fees presently reposing in our statutes were instead found in cases, we would not hesitate to extend them to situations functionally analogous to those which gave rise to and fell within the coverage of those rules. Such is the nature of the common law process. That the rules are now in statutory form compels no change in process. The only alteration is in the materials employed as the basis of deliberation and adjudication. Instead of precedent and case law analogies, the statutes are available. The statutory rules, like the former common law rules, remain only points of departure, only analogies, although exceptionally informative and persuasive and illuminating analogies. J.L. Teel Company, Inc. v. Houston United Sales, Inc., 491 So.2d 851, 857 (1986).
These general premises in mind, there are certain circumstances whereunder I would have this Court hold that attorneys fees and litigation expenses may be imposed. Those are basically situations in which there is a substantially unequal economic and strategic position between the parties to the litigation. Such an inequality of bargaining position does not appear to exist in this case. For that reason I would *1210 hold on the merits that no attorneys fees should be allowed, not that the Court had no authority to entertain the application in the first instance.
NOTES
[1] Miss. Code Ann. (1984 Supp.) § 95-5-4 reads as follows:

If any person shall cut down, deaden, destroy or take away, if already cut or fallen, any cypress, white oak, black oak, or other oak, pine, poplar, black walnut, cherry, pecan, hickory, chestnut, birch, ash, holly, gum, persimmon, cedar, sassafras or beach tree, not his own, without the consent of the owner, he shall pay to the owner of the tree or trees, as a penalty, fifteen dollars ($55.00) for every such tree so cut down, deadened, destroyed or taken away; and for every other tree not herein described so cut down, deadened, destroyed, or taken away, the sum of five dollars ($35.00) shall be paid as a penalty. And in addition to the penalty to be paid as herein provided, he shall pay to the owner of such tree or trees the actual value of such tree or trees so cut down, deadened, destroyed or taken away; and for such actual damages and for such penalty the owner may recover in the same suit. To establish the right of the owner prima facie to recover under the provisions of this section, it shall not be required of the owner to show, by a preponderance of the proof, that the defendant or his agents or employees, acting under the command or consent of their principal, wilfully, recklessly, and knowingly cut such trees, but it shall only be required of the owner to show that such timber belonged to such owner, and that such timber was cut by the defendant, his agents or employees without the consent of the owner, provided, the defendant may establish good faith as an affirmative defense as to the statutory penalty.
[2] We emphatically do not adopt, however, the standard of care requisite in 1883 to avoid a statutory penalty. We deem under modern standards and conditions that more is required than the Court then stated: "Where he acts in good faith, he will not be required to make a survey or resort to any unusual or troublesome means to ascertain boundaries not plainly visible ..." [p. 809] Neither the value of timber, nor its importance to the economy of the State, was as apparent in 1883 as it is today. As we note, infra, the defendant is required to take whatever precautions are appropriate under the circumstances of the case too assure himself that he has the lawful authority to cut the trees, whether a boundary is plainly visible or not.
[3] For an example of courts of this state awarding attorney's fees pursuant to a Federal statute, see: Volkswagen of America, Inc. v. Novak, 418 So.2d 801, 804 (Miss. 1982); 15 U.S.C. § 2310(d)(2).
[1] Other parts of this integrated whole (not implicated in the present case) include customs, administration determinations and practices and, of course, our federal and state constitutions. Custom furnishes the outcome determinative rules of law in a variety of tort and contractual contexts. See, e.g., Canal Barge Co., Inc. v. China Ocean Shipping Co., 770 F.2d 1357, 1361 (5th Cir.1985) (point-bend custom for navigation on Mississippi River); The Norne, 59 F.2d 145, 147 (5th Cir.1932) (same); Dixon, Irmaos & CIA. Ltda. v. Chase National Bank, 144 F.2d 759 (2d Cir.1944) (commercial custom regarding construction of terms of letter of credit). In this era of the regulatory state, no one doubts that executive orders administrative decisions, regulations, practices and, most important, exercises of discretion have become major sources and points of origin of law. All law, of course, is subject ultimately to the constitution of the particular jurisdiction.
[2] In recent years the Mississippi Legislature has enacted a number of statutes authorizing recovery of legal fees and expenses. See, e.g., Miss. Code Ann. § 11-31-2(3)(c) (Supp. 1984) (attorneys fees recoverable against party who brings attachment in bad faith); § 11-53-81 (Supp. 1980) (attorneys fees recoverable in suit on an open account); § 75-9-504(1)(a) (1972) (attorneys fees recoverable by secured party disposing of collateral after default); § 75-9-506 (1972) (attorneys fees must be paid to secured party if debtor redeems collateral); § 75-24-15(2) (Supp. 1985) (attorneys fees recoverable against violator of Consumer Protection chapter); § 75-71-717 (Supp. 1985) (attorneys fees recoverable by party who purchased illegal or fraudulent security); § 83-21-51 (1972) (attorneys fees recoverable against foreign insurance company for bad faith).
[3] One of the best known instances of a court relying heavily upon statutory law as a basis for making common law is Moragne v. States Marine Lines, Inc., 398 U.S. 375, 390, 90 S.Ct. 1772, 1782, 26 L.Ed.2d 339, 351 (1970) (reliance upon widespread federal and state enactment of statutes authorizing recovery for wrongful death as basis for fashioning a wrongful death remedy in general maritime law).