ROY NOBLE LEE, Presiding Justice,
for the Court:
Nancy Owens and Jesse J.V. Owens, wife and husband, appeal from a judgment of the Circuit Court of Lee County, Mississippi, requiring them to pay unto Dr. Earl E. Whitwell and Dr. Ben H. Buchanan, appellees, the sum of twenty thousand three hundred ninety dollars ($20,390) as a condition of the court’s granting the Owens a continuance. The sum included costs, attorney’s fees and lost time of the appel-lees and was paid by the appellants under protest. Appellants also paid to the Circuit Court Clerk of Lee County, Mississippi, the sum of eleven hundred fifty-four dollars ($1,154.00), pursuant to her statement, for jury costs and personnel costs in organizing the court and setting aside one week for the trial of the case. This appeal does not involve assessment of court costs.
The only question presented follows:
Did the trial court err in including under the term “costs” legal fees of opposing counsel and expenses incurred by appellees as a result of moneys not earned and in requiring the appellants to pay such “costs” as a condition to granting a continuance?

Facts

On February 23, 1981, the appellants filed suit in the Circuit Court of Lee County against Dr. R.H. Franks, North Mississippi Medical Center, Dr. Michael Massey, The Upjohn Company, and appellees, Dr. Earl E. Whitwell and Dr. Ben H. Buchanan. By the trial date, November 29, 1981, the case had been settled as to Dr. R.H. Franks, and dismissed or nonsuited as to North Mississippi Medical Center, Dr. Michael Massey, and The Upjohn Company.
The suit was founded upon charges of malpractice against the defendants/appel-lees, which resulted in serious spinal injuries to appellant Nancy Owens. Since there is no appeal from the final judgment on the personal injury question, it will not be necessary to discuss the facts involving *1072 those injuries, except insofar as the exclusion of medical testimony is concerned.[1]
An order was entered in the lower court by agreement of the parties on September 17, 1982, setting the case for trial on its merits November 29, 1982. The Supreme Court of Mississippi rendered a decision on November 17, 1982, in King v. Murphy, 424 So.2d 547 (Miss.1982), holding that Dr. Richard C. Gardner did not qualify as a medical expert in that case competent to testify concerning the standard of medical care owed patients in Tishomingo County, Mississippi. Dr. Gardner was the chief expert witness to be relied upon by appellants in the case sub judice and had been listed as an expert witness in answer to interrogatories propounded by the defendant Upjohn. On November 18 and 19,1982, appellants supplemented answers to interrogatories, stating what Dr. Gardner would testify in response to the Upjohn interrogatories and the Tupelo Orthopedic Clinic interrogatories, the latter a professional association of which Drs. Whitwell and Buchanan were members.
On Monday, November 22, 1982, appel-lees Dr. Whitwell and Dr. Buchanan, filed a motion in limine with regard to Dr. Gardner, Dr. Barnett, David Horn, and Dr. Paul Oliver to the effect that they should not be permitted to testify because incomplete and evasive answers had been submitted in response to interrogatories propounded by appellee, Dr. Whitwell. Further, that Dr. Gardner was not qualified to express an opinion as to the standard of care of physicians in Mississippi following King v. Murphy, supra.
On Wednesday, November 24, 1982, counsel for appellees contacted the trial judge and advised him of their motion in limine and their objection to any testimony from the four witnesses referred to above and specifically directed the court’s attention to the decision in King v. Murphy. Counsel requested an immediate hearing as to whether Dr. Gardner was qualified to testify in Mississippi. On the same date, appellants filed their supplementation to Interrogatory No. 25 by appellee Dr. Whit-well stating that the appellants would call two treating physicians, viz, Dr. Houston Franks, a former defendant, who performed the surgery, and Dr. William Gary, a general practitioner, who had seen Mrs. Owens after her discharge from the hospital. The supplementation did not identify the subject matter upon which either of the doctors would testify. The trial judge indicated that a determination should be made at that point as to whether the case would have to be continued. However, appellants’ counsel stated that, due to the Thanksgiving holidays, he would be unable to attend such a hearing until the day of trial and that he still planned to call Dr. Gardner as an expert witness.
On Thursday, November 25, 1982 (Thanksgiving Day); Friday, November 26, 1982; Saturday, November 27, 1982; and Sunday, November 28, 1982; according to appellees, Dr. Whitwell, Dr. Buchanan, their witnesses and counsel engaged in extensive pretrial preparation for what was expected to be a seven- to ten-day trial. On Monday, November 29, 1982, the first day of trial, the lower court heard the motion to exclude the testimony of Dr. Richard C. Gardner, and granted the motion with the following observation:
All right. Well, gentlemen, I think what it all boils down to is the Court has ruled on the matter. It all boils down to whether or not about two weeks ago, when the Mississippi Supreme Court ruled that Dr. Gardner is not qualified to testify in this state as an expert, in Tish-omingo County he was not qualified. It was reversed because they let him testify up there, and it appear [sic] to me that y’all should have known then if he’s not qualified to testify in Lee County. And you should have done something about it then. Not come down here the day of the trial and argue that Dr. Gardner *1073 should be allowed to testify in Lee County when the supreme court said two weeks ago he’s not qualified to testify in Tishomingo County. And to come down here the day of trial and say, “Well, he should be allowed to testify in Lee County even though they didn’t allow him to testify in Tishomingo, County,” appalls me.
You should have, in my opinion, started making your preparation to supplement your interrogatories and get some of these other experts ready to testify and notify the other side about them then; not wait until — I’m going to uphold the Mississippi Supreme Court’s opinion on Dr. Gardner the day of the trial and then start trying to do it.
When the motion to exclude the testimony of Dr. Gardner was sustained, the appellants moved for a continuance until the next term of the court. The lower court offered a continuance to the appellants, conditioned upon paying certain costs. The attorneys for appellees, at the instruction of the court, submitted a list of expenses which aggregated thirty-six thousand two hundred dollars ($36,200). The lower court asked to see a list of expenses and then made the following comment:
However, with the considerable expense that has been incurred by all parties and the Court in coming to the position that we are at at this moment, the Court’s of the opinion that a continuance should not be allowed at this time, unless counsel for the plaintiffs pay a reasonable amount to the defendants for the expenses which they have incurred and also a reasonable amount to the county for the expense that the county has incurred in organizing this Court today and bringing in a large jury panel to try this case. And in the opinion of the Court, that reasonable amount would be twenty thousand dollars. If counsel for the plaintiffs are willing to pay those expenses, the Court will be inclined to grant the continuance until a later term of court.
If Counsel for the plaintiffs are not willing to pay those expenses, then the Court feels that the working expense that has been incurred in getting the case to trial today is enough to justify going on and using those efforts in trying the case.
MR. GERRITY: (Counsel for Appellants)
May it please the Court, the plaintiff nor the plaintiff’s counsel can afford the cost of this continuance. I would like to make one comment under Your Honor’s holding.
You stated that we’re citing the King v. Murphy case as to grounds for our motion. I want the record to be perfectly clear that the plaintiffs are citing this Court’s ruling today, that Dr. Gardner could not become a reasonable expert even if he came to Tupelo, visited the hospital, read the depositions of all the witnesses who have testified as to what the standard of care and proper conduct is here who are before the Court. The defendants, the defendants' partner, Dr. McDonald and Dr. Franks, have all testified to what the standard is and could not make himself learned on what the standard is and then render an opinion. It’s not on the basis of the decision, but on what this Court ruled, that just today Dr. Gardner would not be entitled to testify; and we’re not citing that decision of ten days ago.
Could we foresee, Your Honor, in every case what the Court would do, I would assure this Court with all due respect that I would do something other than practice law. And if I could tell that far in advance what the Court would do on all these occasions, I would take that ability, and with all due respect, I would follow the horses or follow the dog tracks, because I could do much better than I can practicing law. And it’s the ruling of this Court today, this morning, and not the decision of ten days ago, that prompted the plaintiffs’ motion for a continuance.
The appellants and their counsel, having indicated that they could not afford the payment suggested by the lower court, pro *1074 ceeded into the trial. They attempted to introduce the testimony of expert witnesses (physicians) and objection was sustained on the ground that appellants had not supplemented the interrogatories from the ap-pellees, or that same were evasive and general. Dr. Barnett[2] was further indicated by the lower court not to be qualified under the holding of King v. Murphy, supra. Thereupon, the appellants, being without expert witnesses, moved the court for a continuance until the next term. The lower court further inquired of attorneys for ap-pellees about expenses incurred by them and their clients and required appellees and their counsel to submit affidavits covering their expenses. Pertinent parts of the affidavits follow:
(ATTORNEY’S AFFIDAVIT)
2. That from Wednesday, November 24,1982, through Tuesday, November 30, 1982, Affiant, his partners and associate worked a total of 118.50 hours in preparing for trial, and in the trial of this case; that 89.25 of those hours will require duplication in preparation for any subsequent trial of this cause; that the reasonable value of those 89.25 hours is $5,248.75 and Affiant’s client will be billed the stated amount for those hours.
3. That approximately ten weeks pri- or to the trial date, Affiant blocked out the week of November 29 for the trial of this cause and no other trials, hearings, conferences or appointments were made by Affiant for that week; that in Affi-ant’s opinion, during the three days following the continuance, he lost a minimum of $400.00 as a result of the continuance of this cause; that Affiant has spent in excess of 6 hours in gathering [sic] information for the preparation of this Affidavit and the Affidavits of Dr. Whitwell and Dr. Buchanan and that the reasonable value of this time is $390.00.
4. That Affiant has received statements totaling $3,820.00 from expert medical witnesses who were retained to testify in this cause, for time which they had blocked out to come to Tupelo, Mississippi, for the trial.
5. Affiant would respectfully request the Court to enter an appropriate order directing that this Affidavit is for the exclusive use of the Court and that it is to be used only for the purpose of determining the reasonable costs to be assessed against the Plaintiffs and further directing that the Affidavit not be made available to the public for examination or publication. Affiant would show that the trial of this cause, and the Court’s Order directing Plaintiffs to pay costs were reported in the newspaper and Affi-ant would reasonably believe that the newspaper would print all or a part of this Affidavit and Affiant would further respectfully request the Court that Plaintiffs’ counsel should be instructed that they should not use or attempt to use or make public all or any part of the Affidavit, said Affidavit being made for the sole purpose of complying with the Court’s Order of December 9, 1982.
AFFIDAVIT DR. BEN BUCHANAN
2. Affiant would state that the clinic records are kept on a fiscal year which begins April 1 and ends March 31; that for the eight month period ending November 30, 1982, Affiant’s chrges [sic] for surgery, hospital visits, office visits, x-rays and other services customarily charged by orthopedic surgeons in their practice averaged $8,533.00 per week for the eight month period ended November 30, 1982.
3. That approximately ten weeks pri- or to the trial date, Affiant blocked out the week of November 29 and no surgery or office visits were scheduled for Affi-ant for that week; that Affiant did not perform any surgery or see any patients on November 29 or November 30; that following the continuance on November *1075 30, Affiant did not see any patients in his office for the remainder of the week and did not perform any elective or non-elective surgery, other than four cases of non-elective surgery on patients (who had been in accidents and whom he had admitted to the hospital through the emergency room when he was on call the weekend prior to November 29); Affiant would show that for the week of November 29 he knows of nothing which would have prevented him from performing additional surgery, hospital visits, office visits, x-rays and other services for which he would have customarily charged patients and which would have had a value of $8,533.00; that Affiant is of the opinion that during the period from Monday, November 29, 1982, through Friday, December 3, 1982, he lost the sum of $8,533.00.
4. Affiant would respectfully request the Court to enter an appropriate order directing that this Affidavit is for the exclusive use of the Court and that it is to be used only for the purpose of determining the reasonable costs to be assessed against the Plaintiffs and further directing that the Affidavit not be made available to the public for examination or publication. Affiant would show that the trial of this cause, and the Court’s Order directing Plaintiffs to pay costs were reported in the newspaper and Affi-ant would reasonably believe that the newspaper would print all or a part of this Affidavit and Affiant would further respectfully request the Court that Plaintiffs’ counsel should be instructed that they should not use or attempt to use or make public all or any part of the Affidavit, said Affidavit being made for the sole purpose of complying with the Court’s Order of December 9, 1982.
AFFIDAVIT OF DR. EARL E. WHITWELL
2.Affiant would state that the clinic records are kept on a fiscal year which beings April and ends March 31; that for the eight month period ending November 30, 1982, Affiant’s charges for surgery, hospital visits, office visits, x-rays and other services customarily charged by orthopedic surgeons in their practice averaged $8,260 per week for the eight month period ended November 30, 1982.
3. That approximately ten weeks pri- or to the trial date, Affiant blocked out the week of November 20 and no surgery or office visits were scheduled for Affi-ant for said week; that Affiant did not perform any surgery or see any patients in his office on November 29 or November 30 and following the continuance of this cause on November 30th, Affiant did not perform any surgery nor did he see any patients in his office for the remainder of the week, said dates being December 1, 2 and 3; that Affiant did not produce any medical fees during the week of November 29.
4. Affiant would show that for the week of November 29, 1982, he knows of nothing which would have prevented him from performing surgery, hospital visits, office visits, x-rays and other services for which he customarily charges patients and would therefore that it is his opinion that during the period from Monday, November 29, 1982, through Friday, December 3, 1982, he lost the sum of $8,260.00.
5. Affiant would respectfully request the Court to enter an appropriate order directing that this Affidavit is for the exclusive use of the Court and that it is to be used only for the purpose of determining the reasonable costs to be assessed against the Plaintiffs and further directing that the Affidavit not be made available to the public for examination or publication. Affiant would show that the trial of this cause, and the Court’s Order directing Plaintiffs to pay costs were reported in the newspaper and Affi-ant would reasonably believe that the newspaper would print all or a part of this Affidavit and Affiant would further respectfully request the Court that Plaintiffs’ counsel should be instructed that they should not use or attempt to use or make public all or any part of the Affidavit, said Affidavit being made for the *1076 sole purpose of complying with the Court's Order of December 9, 1982.
On December 30, 1982, the lower court rendered an opinion fixing the appellees’ reasonable costs at twenty thousand three hundred ninety dollars ($20,390), and granting the appellees’ motion for an order limiting use of the affidavits. On January 6, 1983, counsel for appellants delivered to counsel for appellees a check for $20,-390.00, which they were ordered to pay unto appellees as a condition to obtain the continuance. The last paragraph of the order provided:
[A]ny examination of the Affidavits shall only be had after appropriate Order signed by Judge Biggers and that all such examinations of the Affidavits shall be in camera; that the Affidavits shall not be made available to opposing counsel, to the public or to any other person for examination, duplication or publication, and that anyone examining, duplicating or publishing or attempting to examine, duplicate or publish all or any part of the Affidavits, without prior Order of this Court, shall be in contempt of the Order of this Court.
ORDERED, this the 2nd day of February, 1983.
The attorneys for appellant were never afforded the opportunity to examine the appellees and their attorneys with reference to the alleged expenses or to examine the affidavits themselves. In fact, at oral argument, appellants’ counsel stated that they never saw the affidavits until such affidavits were made a part of the record on this appeal.

Discussion of the Question

Obviously, many members of the Bench and Bar in Mississippi have not comprehended the decision in King v. Murphy, 424 So.2d 547 (Miss.1982). Succinctly, this Court said in King that an expert witness who is knowledgeable of, and familiar with, the state-wide standard of care shall not have his testimony excluded on the ground that he does not practice in this state. The lower court apparently did not understand the holding because it stated, in excluding Dr. Gardner’s testimony, that if he was not qualified to testify in Tishomingo County, Mississippi, in King v. Murphy, he certainly was not qualified to testify in Lee County, Mississippi.
In Hall v. Hilbun, 466 So.2d 856 (Miss.1985), the Court went further in setting out specific things a practitioner may do in qualifying an expert on the standard of care in Mississippi. 466 So.2d at 874-875. We refer to these cases solely to indicate that, had the lower court not summarily excluded Dr. Gardner as a witness, in all probability, the appellants could have qualified him as an expert as was done in Trapp v. Cayson, 471 So.2d 375 (Miss.1985), and the problem with which we are now faced, might not have arisen.
It is difficult to understand the actions of the parties. Counsel for the appellants also served as counsel for the plaintiff in King v. Murphy, supra. That decision was handed down twelve days before the trial date of the present case. Although a petition for rehearing was filed by counsel for Murphy, no attempt was made to continue appellants’ case, which everybody agrees could have been done. It is obvious that the trial judge and the attorneys needed time in which to study and comprehend the holding in King v. Murphy.
On November 24, 1982, four days before trial, counsel for appellees had arranged for the trial judge to meet with the parties’ attorneys in order to discuss the advisability of continuing the case, and, at that time, according to the statement of appellees’ counsel at oral argument, was agreeable to a continuance. Counsel for appellants did not consider the matter of such importance as to require his attendance at the meeting. The resulting scenario has already been stated.
Appellees base their argument in support of the lower court’s order for a continuance upon the payment of $20,390 to cover ap-pellees' costs upon sanctions for failure to make discovery. However, there was no indication in the record that the term “sanction” was used by the trial judge or the attorneys, but that the payment was *1077 simply a condition imposed for a continuance. In the briefs, appellees contend that the monetary condition imposed for the continuance constituted sanctions and was permissible and justified under Mississippi Code Annotated § 13-1-237, as amended. In Denman v. Hardy, 437 So.2d 426 (Miss.1983), this Court said:
Our standards based upon the statutory and case law ..., may be summarized as follows:
(1) If a party totally fails to respond to an interrogatory or his response is of absolutely no substance, subsection (d) of § 13-1-237 requires no prior order before imposing sanctions;
(2) If a party gives an incomplete or evasive answer to a discovery request, subsection (d) requires a prior order compelling discovery before sanctions may be imposed;
(3) If the discoverying party would have had no way of determining that a response should have been supplemented, then, the court may impose sanctions under its inherent power even in the absence of a prior order.
437 So.2d at 429.
The appellants filed a “Second Supplementation of Answers to Interrogatories Propounded to Plaintiffs by the Defendants,” propounded on November 19, 1982, which contained some type of answer, although incomplete, to the discovery request of appellee Dr. Earl E. Whitwell. Appellants also filed a “Second Supplementation of Plaintiffs [sic] Response to Interrogatories Propounded by Defendant Earl E. Whitwell,” dated November 24, 1982. This supplementation appears sufficient to bring the case within the rule enunciated in Denman, supra. No order to compel discovery followed from those supplementa-tions, which would not justify sanctions.
The fact that the lower court misconstrued the holding of King v. Murphy, supra, which started the problem that developed here, also leads us to conclude that the monetary payment imposed upon the appellants as a condition for continuance was unreasonable and unjustified. The ap-pellees were agreeable to a continuance of the case five (5) days before the trial date. However, in their affidavits, appellee Dr. Whitwell claims $8,260.00 and appellee Dr. Buchanan claimed $8,533.00 for blocking out the week for trial. They also claim reimbursement because of trial preparation.
Appellees’ attorneys claim $5,248.75 work done in preparing for the trial from November 24, 1982, through November 30, 1982, the day the continuance was granted with conditions imposed, in the sum of $5,248.75. Also, counsel claimed $400.00 monetary losses three days following the continuance and $390.00 for six hours’ work in preparing the affidavits of counsel and affidavits of appellees requested by the trial judge.
The sum of $20,390.00 ordered to be paid by appellants to appellees and their attorneys was for one week’s loss of time and for work performed. The parties in litigation, whether plaintiffs or defendants, experience inconvenience, worry, and financial losses in the litigation process. Such is one of the attendant evils of the judicial process, albeit necessary in the maintenance or functioning of the system. Given the opportunity of paying $20,390.00 for a continuance when their medical witnesses were not permitted to testify was tantamount to aiming a loaded gun at appellants’ heads. They had no alternative except to pay under protest.
If this case were affirmed, and the Bard of Stratford-on-Avon were writing this account, he probably would say again, “O judgment! thou art fled to brutish beasts, and men have lost their reason.”[3]
The judgment of the lower court is reversed, and judgment is rendered here for appellants.
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER, P.J., and DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
HAWKINS and ROBERTSON, JJ., dissent.

. Trial on the merits at a subsequent term resulted in a judgment for the appellees Dr. Whit-well and Dr. Buchanan.

. An orthopedic surgeon from Jackson, Tennessee, who was not examined to determine whether he could qualify as to the standard of care.

. William Shakespeare, “Julius Caesar,” Act III, Scene II.