# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01314-COA

BALBIR SINGH AND JASWINDER KAUR         APPELLANTS

v.

CYPRESS LAKE PROPERTY OWNERS         APPELLEE
ASSOCIATION

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/2014 |
| TRIAL JUDGE: | HON. CYNTHIA L. BREWER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | JOHNNIE MCDANIELS |
| ATTORNEYS FOR APPELLEE: | MICHAEL STEPHEN MACINNIS |
| | JON JERDONE MIMS |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | APPELLANTS FOUND IN CONTEMPT AND ORDERED TO PAY $15,278.54 IN ATTORNEY'S FEES AND EXPENSES TO APPELLEE |
| DISPOSITION: | AFFIRMED - 05/17/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1. Homeowners Balbir Singh and Jaswinder Kaur appeal from the judgment of the Madison County Chancery Court finding them in contempt of a permanent injunction concerning violations of restrictive covenants attached to their property. In the same order, the court considered and granted a distinct request from the Cypress Lake Property Owners Association for legal fees and expenses pursuant to a provision of the covenants entitling the Association to reimbursement for enforcement expenses. The homeowners argue on appeal

that the court erred in finding them in contempt because their noncompliance with the permanent injunction was unwillful. They further argue that the court erred in awarding legal fees and expenses as a judgment for finding the homeowners in contempt. We hold that the contempt finding was not the basis for ordering reimbursement of the legal fees and expenses, but rather a distinct enforcement of the terms of the covenants entitling the Association to reimbursement for enforcement expenses irrespective of the homeowners' contempt status. We affirm the chancellor's judgment.

## FACTS AND PROCEEDINGS BELOW

¶2. Singh and Kaur are homeowners in the Cypress Lake subdivision located in Madison County. The subdivision is subject to restrictive covenants of record. In February 2013, the Association's Architectural Review Committee (ARC) approved a plan submitted by the homeowners for constructing an addition to their house.

¶3. As construction proceeded, the addition was visibly not in compliance with the approved plan, and the general condition of the property was visibly not in compliance with covenant restrictions. The Association provided the homeowners with notice of the violations and met with them in person to develop a plan for remedying the situation. They granted the homeowners three deadline extensions to submit a new plan for construction modifications that would bring the property into compliance with the covenants. The homeowners did not meet the deadlines.

¶4. The Association filed a motion requesting a preliminary injunction, a temporary restraining order, and a permanent injunction. The motion was heard and a permanent

injunction granted on September 11, 2013. The order, filed September 23, 2013, required the homeowners to immediately submit new plans for consideration to the ARC and also required the homeowners to remedy specific violations as enumerated in the order. Concerning the Association's request for legal fees and expenses, the order stated:

> The Association has requested that its claim for legal fees and expenses in this matter which are due from Defendants pursuant to Section 13.02 of the Covenants, as well as the costs for any subsequent actions and costs of removal, if any, be reserved until a separate hearing on those matters, and it is so ordered by the Court. All lien assessments and assessments for violations, in an amount to be determined at the hearing of this matter, are hereby reserved and may be made and filed against the Property as allowed by the Covenants.

¶5.    Over the following months, disagreement continued between the homeowners and the Association. The ARC rejected multiple new plans proposed by the homeowners before finally approving a plan. The City of Madison became involved, shutting down construction on the homeowners' property that had commenced prior to the ARC's final approval of a plan and receipt of a city permit. The Association was also dissatisfied with the quality of some of the subsequent construction, including, for example, the construction of a sidewalk.

¶6.    The Association filed a motion for contempt and for an award of legal fees and expenses on March 11, 2014, asserting that the property was still not in complete accordance with the final approved plan and that the homeowners had also failed to correct many of the violations on the property explicitly enumerated in the chancery court's permanent injunction.

¶7.    The motion was heard on August 5, 2014, after a continuance due to one of the homeowners being out of the country. In the final judgment dated August 20, 2014, the chancery court found the homeowners in contempt of the permanent injunction and ordered

3

them to immediately remedy specific violations on the property as enumerated in the order.

¶8. The chancery court also acknowledged the progress and efforts that the homeowners had made towards satisfying the exacting demands of the Association, and characterized the homeowners' current status of noncompliance with the permanent injunction as "unwillful." The court did not impose monetary sanctions or jail time. Rather, the relief granted enumerated the specific performance necessary to bring the homeowners into compliance with the approved plan and the permanent injunction.

¶9. The chancery court also considered and granted the Association's request for reimbursement of legal fees and expenses pursuant to section 13.02 of the covenants, which had been previously reserved for a separate hearing in the order granting the permanent injunction. While the homeowners opposed imposition of a judgment against them for any fees and expenses, they stipulated to the reasonableness of the requested fees and expenses and waived any requirement of presentation of the *McKee*[1] factors. The Association nevertheless submitted a detailed accounting of its expenses below and has included this evidence in the record on appeal.

¶10. The homeowners now appeal the final judgment finding them in contempt of the permanent injunction and granting the Association's request for an award of legal fees and expenses.

**DISCUSSION**

¶11. The findings of the chancery court will not be disturbed when supported by substantial

---

[1] *McKee v. McKee*, 418 So. 2d 764 (Miss. 1982).

evidence unless the court abused its discretion, applied an erroneous legal standard, was manifestly wrong, or committed clear error. *Pittman v. Lakeover Homeowners' Ass'n*, 909 So. 2d 1227, 1229 (¶7) (Miss. Ct. App. 2005).

> **I.     Whether the chancellor erred in finding the homeowners in contempt of the permanent injunction when the chancellor also found the homeowners' noncompliance with the injunction to be "unwillful."**

¶12.    The homeowners argue that the chancery court erred in declaring them to be in contempt of the permanent injunction because the contempt was "unwillful." Lack of a willful or deliberate violation of a prior judgment or decree is a defense to a citation for contempt. *Newell v. Hinton*, 556 So. 2d 1037, 1044 (Miss. 1990). In *Pittman*, this Court reversed the imposition of monetary sanctions and jail time against a homeowner where the evidence supported that the homeowner was unemployed and could not afford to complete construction of his house by a date ordered by the trial court. *Pittman*, 909 So. 2d at 1230 (¶12). In that case, not only was the contempt "unwillful," but this Court additionally found that the underlying restrictive covenants did not authorize the trial court to have imposed a construction deadline in the first place. *Id*.

¶13.    Here, the chancery court did not impose contempt sanctions, such as a monetary fine or jail time until the contempt was purged. This is consistent with the court's characterization of the homeowners' noncompliance as "unwillful." Instead, the relief granted was, in essence, an update of the standing permanent injunction enumerating the outstanding violations of the covenants and approved plan. And, unlike in *Pittman*, here the underlying enforcement action and the terms of the injunction are permitted by the covenants and are not

overreaching.

¶14.  While we clarify any confusion created by the use of the language "unwillful contempt" in the chancellor's order, we affirm the relief granted, as it did not impose actual sanctions for contempt.

**II.  Whether the chancellor erred in granting the Association reimbursement of legal fees and expenses incurred while enforcing the restrictive covenants.**

¶15.  The homeowners argue that the award of legal fees and expenses should be reversed because a grant of attorney's fees on an erroneous finding of contempt is improper. The Association argues that the award of legal fees and expenses did not stem from the finding of contempt, but instead was reimbursement for the expenses the Association underwent in enforcing the covenants as permitted by the terms of the covenants irrespective of contempt status.

¶16.  The homeowners are correct that when there is no contractual provision or statutory authority providing for attorney's fees, attorney's fees may not be awarded as damages unless punitive damages are also proper. *Grisham v. Hinton*, 490 So. 2d 1201, 1205 (Miss.1986). And an award of attorney's fees, based upon an erroneous finding of contempt, is improper. *Pittman*, 909 So. 2d at 1230 (¶16).

¶17.  But here, the provisions of the restrictive covenants serve to authorize attorney's fees as reimbursement for enforcement expenses irrespective of contempt status. "A restriction expressed in unambiguous language in a covenant will be enforced." *COR Devs. LLC v. Coll. Hill Heights Homeowners LLC,* 973 So. 2d 273, 280 (¶15) (Miss. Ct. App. 2008). Restrictive

6

covenants must be reasonable in order to be enforceable. Here, section 13.02 of the covenants provides:

> This Declaration shall be enforced by any appropriate proceeding at law or in equity (i) against any Person who breaches or violates or threatens to breach or violate any provisions of this Declaration, (ii) to recover damages for any such breach or violation, (iii) to collect any amounts payable by any Owner to the Association under this Declaration, including Assessment attorney's fees, costs of collection, late charges, overhead charges, or other amounts incurred by the Association to perform or discharge any obligation or duty of an Owner under this Declaration . . . .

¶18. The award of attorney's fees in this case was not based on a finding of contempt. While considered at the same hearing and disposed of in the same order, the chancery court explicitly treated the Association's request for legal fees and expenses as a distinct proceeding from the contempt motion. The court's final order states:

> [In] this Court's [previous] Injunction, the Association's legal fees and expenses, any expenses for subsequent actions and costs, if any, and assessments for violations were reserved for a separate hearing. The Association has requested their legal fees and this request is distinct and separate from the Contempt relief sought by the Association.

Unlike the circumstances in *Pittman*, where the underlying enforcement action overreached what was permitted by the covenants, the underlying enforcement action and injunction in this case were consistent with the terms of the restrictive covenants. The homeowners are bound by this attachment to their property. They were in violation of the covenant restrictions as determined by the court, and the court appropriately enforced section 13.02 of the covenants to find the Association entitled to reimbursement for enforcement expenses.

## CONCLUSION

¶19. While we reiterate that lack of willfulness is a defense to a citation for contempt, we

affirm the relief granted on the Association's motion for contempt because the relief did not include sanctions for contempt. We affirm the distinct award of attorney's fees and expenses to the Association for reimbursement of enforcement expenses under section 13.02 of the covenants.

¶20.    **THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

   **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**