# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00507-COA

**WELLSGATE HOMEOWNERS ASSOCIATION**                    **APPELLANT**

**v.**

**ASHLEY HILTON**                                                              **APPELLEE**

DATE OF JUDGMENT:              02/14/2019
TRIAL JUDGE:                        HON. LAWRENCE LEE LITTLE
COURT FROM WHICH APPEALED:   LAFAYETTE COUNTY CHANCERY
                                     COURT
ATTORNEY FOR APPELLANT:       M. REED MARTZ
ATTORNEYS FOR APPELLEE:       JESSA KATE CHRISTIAN
                                     CASEY LANGSTON LOTT
NATURE OF THE CASE:            CIVIL - REAL PROPERTY
DISPOSITION:                      REVERSED AND REMANDED - 05/05/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE J. WILSON, P.J., WESTBROOKS AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     Ashley Suzette Hilton purchased property in the Wellsgate subdivision, which is located in Lafayette County, Mississippi, on October 5, 2017.  Hilton's property was subject to two sources of rules and regulations established by the Wellsgate Homeowners Association: (1) "Declaration of Covenants, Conditions, and Restrictions For Wellsgate" (CCRs); and (2) "Declaration of Rules, Regulations and Enforcement Procedure for Wellsgate" (RREs). These included restrictions on short-term sub-leasing.  Hilton rented out her house through a website called "Airbnb" for limited periods of time.  On May 15, 2018, Wellsgate's management company sent a violation letter to Hilton, which she never received.

On June 29, 2018, Wellsgate filed a complaint in the Lafayette County Chancery Court against Hilton to enjoin her from renting out her house in violation of the CCRs. After discovery, the matter went to trial on January 14, 2019. The court ruled in favor of Wellsgate and awarded it (1) a permanent injunction against Hilton; and (2) attorney's fees of $777.50 of the $4,774.97 that Wellsgate had requested. Wellsgate appeals the chancery court's partial award of attorney's fees. After reviewing the record, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2. Hilton purchased property in the Wellsgate subdivision, which is located in Lafayette County, Mississippi, on October 5, 2017. The warranty deed was filed in the Lafayette County Chancery Court on October 10, 2017. Hilton was a fifth-grade language-arts teacher, high school softball coach, and a middle school volleyball coach. To make additional income, Hilton had rented her prior home to tenants, so she decided to rent out her house in Wellsgate as well. In the spring of 2018, she listed her house as available to rent for limited periods of time on Airbnb's website. Additionally, Hilton helped other neighbors in Wellsgate set up profiles on Airbnb.com to rent out their houses.

¶3. Hilton's property was subject to covenants (CCRs), which were recorded with the Lafayette County Chancery Clerk on May 28, 1999. The CCRs contained a provision that prohibited owners of homes located in the subdivision from leasing their homes for a period of less than six months:

> Lease or rental of a dwelling for residential purposes shall not be considered to be a violation of this covenant so long as the lease (i) is for not less than the entire dwelling and all the improvements thereon, (ii) is for a term of at least six (6) months, and (iii) is otherwise in compliance with the rules and

2

regulations as may be promulgated and published from time to time by the Board of Directors. All leases shall be required to be in writing, and prior to commencement of any such lease, the Property Owner shall provide the Association and the managing agent of the Association, if any, with copies of such lease.

¶4. Additionally, the CCRs provided that violators would be required to pay the Association's attorney's fees if litigation was necessary:

> Any Person entitled to file or maintain a legal action or proceeding for the actual or threatened violation or breach of this Declaration shall be entitled to recover attorney's fees and other costs and expenses attributable to such action or proceeding, and the Association shall be entitled to recover and receive any other amounts specified in Section 9 of Article IV.

¶5. Wellsgate also created a separate document, the RREs, which contained the rules and regulations for homeowners. It prohibited short-term leasing. On or about October 10, 2017, the Board of Directors for Wellsgate revised the RREs to provide:

> When a violation occurs, the Association Manager shall send a violation letter to the appropriate owner/owners giving them ten days to correct the violation . . . A homeowner in violation of any provision of the CCRs may request a hearing during the ten-day cure period. We will request attorney fees and court costs which will be added to the unpaid amounts and collection expenses . . . .

¶6. The RREs also imposed daily fines after notice of a violation was given. The daily fines accrue each night after notice that the owner advertised or made her property available for lease, rental, or other prohibited occupation. The RREs provide:

> For a first violation, the daily fine shall be 75% of the advertised nightly price or $1000/day, whichever is greater. Upon a second violation by the owner, the above procedure shall be followed except that the fine shall be 85% of the advertised nightly price or $1500/day, whichever is greater. Upon a third violation by the owner, the above procedure shall be followed except that the fine shall be 90% of the advertised nightly price or $2000/day, whichever is greater.

3

Thus, violations of the covenants subjected homeowners to paying attorney's fees relating to violations, and the RREs subjected them to daily fines after the owner received the notification of the violation.

¶7.     On May 15, 2018, the Association's management company sent a notice-of-violation letter to Hilton.[1]  In the letter, the Association noted that her property was listed for rent on Airbnb.com in violation of the CCRs.  The letter requested that Hilton remove the property from the listing within ten days and cease any further attempt to lease the property except as provided in the CCRs.  Additionally, in the letter, the Association stated that a failure to comply could result in legal action and fines.  The letter was sent to an address in Hattiesburg, Mississippi.  However, Hilton had never resided or received mail in Hattiesburg, Mississippi.  Thus, Hilton never received the violation letter.

¶8.     On June 29, 2018, Wellsgate filed a complaint against Hilton in the Lafayette County Chancery Court to enjoin her from renting out her house in violation of the CCRs and the RREs.  In the complaint, Wellsgate sought (1) a judgment equal to the applicable daily fines, reasonable attorney's fees, court costs, and pre-judgment interest; and (2) an injunction against Hilton enjoining her from future violations of the CCRs.  Hilton was served with the complaint on July 30, 2018, and filed her answer denying all claims on August 30, 2018.  The answer generally denied the allegations and pleaded various generic defenses. However, the answer did not say that Hilton had stopped renting the home.  From the record, it does not

_____

[1] Wellsgate alleged in its complaint that it sent Hilton a notice-of-violation letter on September 22, 2017, as well.  However, at trial, it was made clear that this notice was sent in error.

appear that Hilton ever informed Wellsgate that she was no longer renting the home prior to the lawsuit or the filing of her answer.

¶9.     On October 4, 2018, trial counsel for Wellsgate took Hilton's deposition. In preparation for deposition, Wellsgate had propounded written discovery to Hilton, including requests for admission, interrogatories, and requests for the production of documents. Wellsgate did not receive any response to its requests until after the deposition.

¶10.    At her deposition, Hilton testified that she was a member of the Wellsgate Homeowners Association. She could not remember if she was given a copy of the CCRs, but Hilton admitted that someone went over the CCRs with her when she bought her house and that she personally "skimmed" over them herself. Hilton also admitted to renting out her home on several occasions in the spring of 2018.

¶11.    Hilton further testified that shortly after she received the complaint, but without notifying the Association, she deleted her profile and records from the Airbnb website. Hilton testified that her attorney told her to make sure she removed everything from the Airbnb website, which she did. Aside from Hilton's Airbnb banking deposits, all other records related to the matter were deleted once Hilton deleted her profile. Hilton also testified that she did not receive any violation letters. Additionally, Hilton testified that she did not review the CCRs carefully until after she received the notice of the lawsuit. Once she reviewed the pleadings and CCRs, she admitted she was in violation of the CCRs regarding the leasing of her home.

¶12.    On January 8, 2019, Hilton moved for summary judgment[2] against Wellsgate on the issue of her liability for fines.  In her motion, Hilton claimed that Wellsgate sent the violation letter to the wrong address in May 2018.  Therefore, she allegedly did not receive notice of her violation of the CCRs until she was served with a summons and a copy of her complaint on July 30, 2018.

¶13.    The matter was tried on January 14, 2019.  Because Hilton had stopped leasing her home, the chancery court addressed only two issues: whether Hilton would be fined, and whether Wellsgate was entitled to any attorney's fees and costs.  The daily-fines issue depended on whether Hilton had received notice of her violation against the CCRs, which was required by the RREs.  Hilton testified that she did not receive any violation letters.  Additionally, she testified that she only realized she was in violation of the CCRs when she received notice about the lawsuit.  But she was allegedly aware of the existence of the CCRs and had "skimmed" them prior to renting out her house.  Hilton also testified that she did not look at the RREs until after she was served with a copy of the complaint.

¶14.    At the end of hearing testimony, the chancery court directed Wellsgate's counsel to submit any documentation to support the request for attorney's fees.  Wellsgate did this in the form of an email that contained billing records on the matter.

¶15.    The chancery court entered judgment in favor of Wellsgate on February 14, 2019.  The court found that Hilton admitted to eleven instances where she violated the CCRs, specifically Article XI, regarding renting out her property.  Therefore, the court enjoined and

_____

    [2] The record is unclear whether the chancery court ruled on this motion.  There is no order in the record on appeal.

6

restrained her from "any further rentals/leases which do not comply with the CCRs." The court noted that Hilton is not prohibited from leasing her property within the Wellsgate subdivision as long as she is in compliance with the CCRs.

¶16. The chancery court denied Wellsgate's request for exemplary or punitive damages, namely the daily fines specified in the RREs. To have recovered daily fines, Wellsgate would have had to have provided Hilton with a sufficient violation-notice letter. The court found that Wellsgate sent the violation-notice letter to Hilton at the mailing address of the previous owner. Therefore, the court found that the notice was insufficient to warrant the imposition of the daily fines.

¶17. The chancery court awarded Wellsgate attorney's fees and costs of prosecution because it found that Hilton was responsible for being aware of the contents of the CCRs applicable to her property. The court found that the CCRs contain no requirement that Hilton be provided a notice of violation or an "opportunity to cure" for Wellsgate to be entitled to attorney's fees and costs. But the chancery court said that if Hilton had received proper notice of her violations, the attorney's fees would likely not have been incurred.

¶18. While the chancery court acknowledged that Wellsgate was entitled to some attorney's fees, it limited the amount, finding that there was no evidence presented at trial that Hilton continued to breach the CCRs after receiving notice of the lawsuit. The chancery court declined to award attorney's fees that had been incurred after Hilton's notice of the lawsuit. The court viewed any additional action on Wellsgate's behalf thereafter as an attempt to collect daily fines, to which it was not entitled. Therefore, while Wellsgate submitted a

7

request for $4,774.97 in attorney's fees, the court awarded Wellsgate only $777.50, which accounted for the attorney's work prior to Wellsgate's service of process.

¶19. On March 12, 2019, Wellsgate timely filed this appeal from the judgment, arguing that the chancery court failed to award all of the submitted attorney's fees.

## STANDARD OF REVIEW

¶20. "The findings of the chancery court will not be disturbed when supported by substantial evidence unless the court abused its discretion, applied an erroneous legal standard, was manifestly wrong, or committed clear error." *Singh v. Cypress Lake Prop. Owners Ass'n*, 192 So. 3d 373, 376 (¶11) (Miss. Ct. App. 2016).

## DISCUSSION

**I.     Whether the chancery court erred in not awarding Wellsgate attorney's fees that were incurred after the filing of the complaint.**

¶21. "Attorney's fees are a special remedy available only when expressly provided for in either a statute or contract, or when there is sufficient proof to award punitive damages." *M&R Builders LLC v. Williams Equip. & Supply Co.*, 281 So. 3d 320, 342 (¶82) (Miss. Ct. App. 2018) (quoting *Falkner v. Stubbs*, 121 So. 3d 899, 903 (¶15) (Miss. 2013)). "[A] contractual provision to pay attorney's fees is not a blank check; it is limited by the reasonableness of the fee [that] includes an analysis of whether work performed was actually necessary." *Berlin v. Livingston Prop. Owners Ass'n Inc.*, 232 So. 3d 148, 159 (¶33) (Miss. Ct. App. 2017) (citation omitted). The Mississippi Supreme Court "has expressly mandated that a trial court's determination of reasonable attorney's fees must 'consider the eight factors enumerated in Rule 1.5 of the Rules of Professional Conduct.'" *Bailey Law PLLC v. Morgan*

8

*& Morgan PLLC (In re Estate of Bourne)*, 282 So. 3d 796, 806 (¶32) (Miss. Ct. App. 2019)

(quoting *BellSouth Pers. Commc'ns LLC v. Bd. of Supervisors of Hinds Cty.*, 912 So. 2d 436,

448 (¶39) (Miss. 2005)). The reasonableness of the fee is determined by reference to Rule

1.5(a) of the Mississippi Rules of Professional Conduct (MPRC), which states:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*Accord In re Estate of Bourne,* 282 So. 3d at 805 (¶29).

¶22.    "[A] court is authorized to award reasonable attorneys' fees, [and the] court may make

the award based on the information already before it and the court's own opinion based on

experience and observation." *Brown v. Hewlett*, 281 So. 3d 189, 200 (¶42) (Miss. Ct. App.

2019) (quoting Miss. Code Ann. § 9-1-41 (Rev. 2014)). "The award must be supported by

credible evidence, but determining a reasonable fee is left to the discretion of the trial judge."

*Hatfield v. Deer Haven Homeowners Ass'n Inc.*, 234 So. 3d 1269, 1274 (¶15) (Miss. 2017).

¶23.    In *BellSouth*, the Mississippi Supreme Court ruled that the trial court abused its

discretion in failing to consider the MRPC 1.5 factors for reasonableness of attorney's fees.

*BellSouth*, 912 So. 2d at 448 (¶40). The supreme court underscored the importance of

issuing a complete MRCP 1.5(a) analysis and its expectation of the credible evidence needed.

*Id*. at 446 (¶34). In *BellSouth*, the Mississippi Supreme Court determined that the trial court

9

failed to make any substantive findings of fact consistent with MRCP 1.5(a) in support of its award. *Id*. at 447 (¶36). The supreme court determined that the trial court only made minimal findings.[3] *Id*. The supreme court vacated the circuit court's order assessing attorney's fees and remanded the case to the circuit court with instructions "to make appropriate findings of fact and conclusions of law to support any such award" of attorney's fees. *Id*. at 448 (¶40).

¶24. Like *Bellsouth*, in this case it is clear that the chancery court only minimally applied the MRPC 1.5 reasonableness factors to the determination of attorney's fees. There is no dispute that Hilton breached and violated the CCRs when she rented out her home on Airbnb.com and that, according to the CCRs, Wellsgate was entitled to attorney's fees. However, the chancery court erred in only awarding $777.50 of the $4,774.74 in attorney's fees that Wellsgate requested without fully applying the MRPC 1.5 reasonableness factors.

¶25. The chancery court's rationale for awarding Wellsgate only $777.50 in fees is that the service of the complaint was Hilton's first notice of the violation; therefore, Hilton could not have cured her violation prior to the lawsuit. Additionally, in its judgment, the court found that there was no evidence that Hilton continued to breach the CCRs after the filing of the complaint; therefore, the court concluded that "any additional action on the part of the Plaintiff after [Hilton received notice of the lawsuit] was an attempt [by Wellsgate] to collect the daily fines specified in the [RREs]."

---

[3] In awarding a request of $100,000 in attorney's fees, the trial court had merely assumed that a case that took three years to complete must be worth $100,000 in legal fees. *Id*. at (¶37).

10

¶26. However, there is no evidence in the record that Wellsgate knew that Hilton had stopped renting the property prior to filing suit. Hilton never notified Wellsgate of this. Wellsgate did not learn this until it took Hilton's deposition in October 2018. Wellsgate propounded written discovery prior to taking Hilton's deposition but did not receive the requested documents until after the deposition. At the deposition, Hilton testified that once she received the complaint, she immediately took her property off the Airbnb.com listing and ceased renting out her house in violation of the CCRs. However, Hilton failed to notify the Association that she ceased renting out her house prior to her deposition.

¶27. The chancery court found that Wellsgate proceeded with the lawsuit in an attempt to collect the daily fines under the RREs. This is not supported by the evidence in the record on appeal. Hilton answered Wellsgate's complaint with general denials of the allegations and denied that Wellsgate was entitled to any relief. Wellsgate had no way of knowing that (1) Hilton did not receive her violation letter or that (2) she had ceased renting out her home in violation of the CCRs until Hilton's deposition.

¶28. Wellsgate was simply enforcing the CCRs. After sending the violation letter, because there was no response, Wellsgate filed the lawsuit. Even after filing the complaint, Hilton denied all allegations of the violations in her answer. She did not plead that she was no longer renting the property. Thereafter, Hilton failed to provide responses to the discovery prior to the deposition. Therefore, Wellsgate reasonably continued with the deposition, incurring additional attorney's fees as shown in the itemization. Wellsgate's itemization of attorney's fees indicates that the parties attempted to settle prior to trial. Without more, we

11

cannot say that preparation for trial, or the trial itself, was unnecessary to resolve any conflicts.

¶29. With Hilton's admission of violating the CCRs, Wellsgate was clearly entitled to attorney's fees. The chancery court erred in its calculation of the amount of attorney time for which Wellsgate is entitled to be compensated. The court further failed to apply the other reasonableness factors enumerated in MRPC 1.5. In this case, the proper award of attorney's fees should include time beyond the filing and service of the complaint. The chancery court abused its discretion in awarding such minimal attorney's fees without considering Hilton's failure to notify Wellsgate of her actions early on. Further, the chancery court failed to apply all the factors for calculating a reasonable fee.

## CONCLUSION

¶30. Because the chancery court failed to evaluate Wellsgate's request for fees using all the MRPC 1.5 factors, we reverse the court's award of attorney's fees and remand. The chancery court may, in reconsidering this matter, allow further submissions by counsel and convene a supplemental hearing on the matter.

¶31. **REVERSED AND REMANDED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

12